## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Epic Systems Corporation,

       Plaintiff,

   v.

                                 Case No. 9:22-cv-80173

Decapolis Systems, LLC,

       Defendant.

---

### PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

**QUARLES & BRADY LLP**

Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195
Tel.: (813) 387-0300
Fax: (813) 387-1800
kelli.edson@quarles.com
lynda.dekeyser@quarles.com
rebecca.wilt@quarles.com
DocketFL@quarles.com

Martha Jahn Snyder, *Pro Hac Vice*
Anita Marie Boor, *Pro Hac Vice*
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
martha.snyder@quarles.com
anita.boor@quarles.com

*Counsel for Plaintiff Epic Systems Corporation*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 3

    A.  The Parties and the Instant Suit ........................................................... 3

    B.  The Asserted Patents ............................................................................ 4

        1.  U.S. Patent No. 7,464,040 ......................................................... 5

        2.  U.S. Patent No. 7,490,048 ......................................................... 5

III.  LEGAL STANDARD .......................................................................................... 6

    A.  The Court May Properly Decide Patent Eligibility on a Rule 12 Motion. ............ 6

    B.  Abstract Ideas Are Ineligible for Patenting Under the Two-Step Test of Alice. ............................................................................................... 7

IV.  ARGUMENT ...................................................................................................... 8

    A.  The '040 Patent Is Directed to Patent-Ineligible Subject Matter. ......................... 9

        1.  Claim 2 of the '040 Patent is directed to an abstract method. .................. 9

        2.  Claim 2 of the '040 Patent contains no inventive concept..................... 12

        3.  None of the '040 Patent's other claims is patent eligible. ...................... 13

    B.  The '048 Patent Is Directed to Patent-Ineligible Subject Matter. ...................... 15

        1.  Claim 2 of the '048 Patent is directed to an abstract method. ................ 15

        2.  Claim 2 of the '048 Patent contains no inventive concept..................... 17

        3.  None of the '048 Patent's other claims is patent eligible. ...................... 18

    C.  No Claim Construction Issues or Factual Disputes Prevent the Court From Deciding this Issue at this Stage of the Case. ..................................... 19

V.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013)............................................................................... 10

*Adaptive Streaming Inc. v. Netflix, Inc.*,
 836 F. App'x 900, 2020 WL 7334126 (Fed. Cir. 2020) ....................................... 13

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
 838 F.3d 1253 (Fed. Cir. 2016)............................................................................... 17

*Alibris v. ADT LLC*,
 2015 WL 5084231 (S.D. Fla. Aug. 28, 2015)......................................................... 7

*Alice Corporation v. CLS Bank*,
 573 U.S. 208 (2014)................................................................................... passim

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................... 7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
 827 F.3d 1341 (Fed. Cir. 2016)............................................................................. 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................... 7

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018)............................................................................ 20

*Black v. Kerzner Int'l Holdings Ltd.*,
 958 F. Supp. 2d 1347 (S.D. Fla. 2013) ................................................................. 7

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
 955 F.3d 971 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1053 (2021) ..................... 18

*BSG Tech LLC v. Buyseasons, Inc.*,
 899 F.3d 1281 (Fed. Cir. 2018)................................................................... passim

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
 859 F.3d 1352 (Fed. Cir. 2017)............................................................................. 7

*Decapolis Systems, LLC v. Epic Systems Corporation*,
 No. 6:21-cv-00434-ADA (W.D. Tex. Apr. 29, 2021) ............................................ 3

*EasyWeb Innov., LLC v. Twitter, Inc.*,
 689 F. App'x 969, 2017 WL 1969492 (Fed. Cir. May 12, 2017)............................ 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016)................................................................... passim

*Enco Sys., Inc. v. DaVincia, LLC*,
 845 F. App'x 953, 2021 WL 855856 (Fed. Cir. 2021) ......................................... 20

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................................10

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021) ...............2, 16

*Ex Parte Joao* ("*Joao I*"),
    No. 2016-003277, 2017 WL 2377811 (P.T.A.B. May 23, 2017).......................2, 16

*Ex Parte Joao* ("*Joao II*"),
    No. 2016-002070, 2017 WL 2303383 (P.T.A.B. May 25, 2017).......................2, 11

*FairWarning IP LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016).............................................................................16

*Genetic Technologies, Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016).............................................................................2, 7

*Gottschalk v. Benson*,
    409 U.S. 63 (1972).................................................................................................8

*In re Greenstein*,
    782 F. App'x 1035, 2019 WL 4233554 (Fed. Cir. 2019).......................................12

*In re Salwan*,
    681 F. App'x 938, 2017 WL 957239 (Fed. Cir. 2017).......................................2, 11

*Joao Bock Trans., LLC v. Fid. Nat. Info. Servs., Inc.*,
    122 F. Supp. 3d 1322 (M.D. Fla. 2015)..............................................................2, 17

*Joao Bock Trans., LLC v. Jack Henry & Assocs., Inc.*,
    76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015)............2, 17

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
    566 U.S. 55 (2012)................................................................................................18

*Mortg. Appl'n Techs., LLC v. MeridianLink, Inc.*,
    839 F. App'x 520, 2021 WL 97347 (Fed. Cir. 2021) .....................................11, 13

*Ortega v. Christian*,
    85 F.3d 1521 (11th Cir. 1996) ...............................................................................7

*SAP America, Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)............................................................................2, 7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...............................................................................20

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)............................................................................7, 8

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 2515 (2020) ...................18

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)........................................................................14, 19

iii

**Statutes**

35 U.S.C. § 101 ................................................................................................... 1, 8

**Rules**

Fed. R. Civ. P. 12(c) .................................................................................................. 7

iv

Pursuant to Rule 12(c), Epic Systems Corporation ("Epic") asks the Court to enter judgment on the pleadings that the two patents asserted by Decapolis Systems, LLC ("Decapolis") are not eligible for patenting under 35 U.S.C. § 101.

## I.   INTRODUCTION

Section 101 of the Patent Act sets forth requirements for the subject matter eligible for patenting—it must be "new and useful" and a "process, machine, manufacture, or composition of matter" or "any new and useful improvement thereof." 35 U.S.C. § 101. In *Alice Corporation v. CLS Bank, International*, the Supreme Court held that non-inventive abstract ideas fall outside the allowable subject matter. 573 U.S. 208, 216 (2014). Both asserted patents—issued before *Alice*—fail to claim patentable subject matter under the *Alice* test, as applied over the past eight years.

The first patent—U.S. Patent No. 7,464,040 ("the '040 patent")—is directed to the idea of generating and transmitting insurance claims in connection with patient information that is sent and received. The second patent—U.S. Patent No. 7,490,048 ("the '048 patent")—is directed to the idea of processing requests to access and change patient information and generating and transmitting messages in connection with that process. These are quintessential abstract concepts—and not new ones at that. People have been sending and receiving information, requesting access to information, and generating messages based on that information for eons.

Neither patent imbues these abstract ideas with any inventive concept. They do not teach any novel means of *how* to accomplish the abstract ideas. Rather, the specifications teach that the ideas may be completed using conventional computers performing ordinary, generic functions. Consequently, the patents are not directed to solving known problems associated with healthcare information or computer science; they merely tell the reader to carry out age-old human activities with already understood computerized techniques.

1

The Patent Trial and Appeal Board ("PTAB") and courts around the country concur in this analysis. In fact, the PTAB considered near-identical claims as those asserted here, from the same named inventor, and concluded that they were abstract. *Ex Parte Joao* ("*Joao I*"), No. 2016-003277, 2017 WL 2377811, at *3 (P.T.A.B. May 23, 2017); *Ex Parte Joao* ("*Joao II*"), No. 2016-002070, 2017 WL 2303383, at *4 (P.T.A.B. May 25, 2017). At least two district courts have done the same, albeit for abstract concepts in contexts outside of healthcare. *Joao Bock Trans., LLC v. Fid. Nat. Info. Servs., Inc.*, 122 F. Supp. 3d 1322 (M.D. Fla. 2015); *Joao Bock Trans., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015). And the Federal Circuit has consistently found that claims directed to abstract ideas similar to those at-issue here are not patentable. *Ericsson Inc. v. TCL Commc'n*, 955 F.3d 1317 (Fed. Cir. 2020); *In re Salwan*, 681 F. App'x 938, 2017 WL 957239 (Fed. Cir. 2017) (nonprecedential).

This motion is ripe for decision now. The claims at-issue do not require formal construction for this analysis because no reasonable interpretations could change their abstract nature. Moreover, the deadline to exchange proposed terms for construction has passed and Decapolis has not identified any claims it contends need construction for any reason.[1] Beyond that, no factual issues prevent the Court from deciding this motion now; the specifications teach conventional means of carrying out the claimed methods and systems; no discovery is needed on that point.

Patent litigation is expensive and time-consuming. Because the asserted patents are facially patent-ineligible, the Court should grant this motion now to conserve both the parties' and the Court's time and resources. *Genetic Techs., Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

---

[1] Likewise, in other cases where Decapolis has asserted the same patents, it argued that any disputed terms could be understood using their plain and ordinary meanings. *See Decapolis v. AthenaHealth, Inc.*, No. 21-cv-686-ADA, Dkt. 16, Resp. Br., at 9-15 (W.D. Tex. Jan. 28, 2022).

QB\73744451.4

## II.    BACKGROUND[2]

### A.    The Parties and the Instant Suit

Epic is a Wisconsin corporation with its campus in Verona, Wisconsin. (Dkt. 1, ⁋ 9; Dkt. 18, at 6, ⁋ 2). It is a leader in the healthcare software industry and offers solutions to manage electronic health records ("EHR"). (*See id.*, ⁋ 29).[3]

Decapolis is a Florida Limited Liability Company ostensibly operating out of West Palm Beach under the direction of Raymond Joao. (Dkt. 27, ⁋ 9; Dkt. 33, at 6, ⁋ 2). Decapolis has not alleged that it provides any goods or services; rather, it appears to be in the business of acquiring and asserting patents for profit. In the past 13 months, Decapolis has initiated a wave of suits against a wide variety of entities based on the '040 and '048 Patents; as of May 20, 2022, Decapolis has asserted the two patents against 29 different entities. Appendix A summarizes these suits.[4]

This dispute between these parties has been ongoing for roughly a year. Decapolis sued Epic in the Western District of Texas in April 2021, alleging Epic's software infringes the two patents at-issue here. *Decapolis Systems, LLC v. Epic Systems Corporation*, No. 6:21-cv-00434-ADA, Dkt. 1 (W.D. Tex. Apr. 29, 2021). Epic moved to dismiss for improper venue or to transfer. *Id.*, Dkt. 10. In the interim, Decapolis filed lawsuits against two Epic customers for infringement of the same two patents, premised at least in part on use of Epic's software.[5] Decapolis then

---

[2] Unless otherwise noted, because the Court must decide this motion on the factual allegations in the pleadings, this section cites to Epic's Amended Complaint, which attaches the two patents at-issue, and Decapolis' Counterclaims, which assert that Epic infringes those two patents.

[3] Epic disputes that any of its software solutions infringe any asserted claim. (Dkt. 27, Am. Compl., ⁋⁋ 27-30, 35-38; Dkt. 34, Answer to Counterclaims, ⁋⁋ 30-70).

[4] "In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts." *Reeves v. United States*, 526 F. Supp. 3d 1226, 1232 (S.D. Fla. 2021); *see also Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524, 2020 WL 5491428, at *2 (S.D. Fla. Aug. 7, 2020).

[5] *Decapolis Systems, LLC v. Univ. Health Sys.*, No. 6:21-cv-01252-ADA, Dkt. 1 (W.D. Tex. Dec. 1, 2021) & *Decapolis Systems, LLC v. Central Texas Comm. Health*, No. 6:21-cv-01262-ADA, Dkt. 1 (W.D. Tex. Dec. 3, 2021).

voluntarily dismissed its complaint against Epic without prejudice, leaving Epic and its other customers in peril of being targeted with future lawsuits. No. 6:21-cv-00434-ADA, Dkt. 24 (W.D. Tex. Dec. 20, 2021).

Rather than wait for Decapolis to sue more of Epic's customers on the same two patents, Epic filed a declaratory judgment action against Decapolis in this Court, Decapolis' home venue, on February 2, 2022 (Dkt. 1), and Epic's customers moved to stay their suits in Texas pending the outcome of this case.[6] Decapolis filed its answer and counterclaims on April 8, 2022. (Dkt. 18). The counterclaims assert that Epic's software infringes "at least" Claims 1 and 46 of the '040 Patent (*id.*, ¶ 54) and "at least" Claims 1, 2, 10, 20, and 22-40 of the '048 Patent (*id.*, ¶ 34). Epic timely responded to Decapolis' counterclaims on April 29, 2022. (Dkt. 32). Previously, on April 14, 2022, Epic had amended its Complaint to include a claim for declaratory judgment of invalidity of the '048 Patent. (Dkt. 27). Pursuant to Rule 15(a)(3), Decapolis' Answer to Epic's Amended Complaint was due April 28, 2022. Decapolis belatedly filed an answer and counterclaims on May 5, 2022. (Dkt. 33). Epic timely responded to the counterclaims on May 19, 2022. (Dkt. 34).

### B.     The Asserted Patents

Both patents list Raymond Anthony Joao as the sole inventor. (*See* '040 Pat., Cover; '048 Pat., Cover).[7] Their specifications are nearly identical, except (a) their abstracts focus on different aspects of managing patient information and (b) the '048 Patent includes a handful of additional figures and paragraphs of text (Figs. 16A, 16B, 17A, and 17B and cols. 43:63-51:33).

---

[6] *Univ. Health Sys.*, No. 6:21-cv-01252-ADA, Dkt. 8 (W.D. Tex. Feb. 4, 2022) & *Central Texas Comm. Health*, No. 6:21-cv-01262-ADA, Dkt. 8 (W.D. Tex. Feb. 4, 2022).

[7] The '040 Patent is attached to the Amended Complaint at Dkt. 27-1. Epic cites to it as "'040 Pat." The '048 Patent is attached to the Amended Complaint at Dkt. 27-2. Epic cites to it as "'048 Pat."

### 1.    U.S. Patent No. 7,464,040

The '040 Patent is titled "Apparatus and method for processing and/or for providing healthcare information and/or healthcare-related information." Relevant to the claims asserted, the specification teaches: (a) receiving information regarding an individual that was stored in a healthcare record and transmitted from a first computer or communication device associated with a healthcare provider; (b) generating an insurance claim, wherein the insurance claim is automatically generated by a processing device in response to the storing of the information or the updating of the healthcare record; and (c) transmitting the insurance claim to a second computer or communication device. ('040 Pat., Abstract, 4:63-5:9, 13:52-16:6; *see also* Claims 1, 2, and 46). Essentially, the specification teaches generating and transmitting insurance claims after receiving patient information relevant to those insurance claims.

The specification does not teach any novel techniques for *how* to send, receive, generate, or transmit the information but instead teaches carrying these steps out with ordinary devices: "In the preferred embodiment, any of the provider computer(s) 20, the payer computer(s) 30, the patient computer(s) 40, and/or the intermediary computer(s) 50, ***can be any computer or communication device***, including, but not limited to, a personal computer, a home computer, a server computer, a network computer, a hand-held computer, a palmtop computer, a laptop computer, a personal communication device, a personal digital assistant, a telephone, a digital telephone, a television, an interactive television, a beeper, a pager, and/or a watch." ('040 Pat., 15:4-14 (emphasis added)).

### 2.    U.S. Patent No. 7,490,048

The '048 Patent also is titled "Apparatus and method for processing and/or for providing healthcare information and/or healthcare-related information." Relevant to the claims asserted, the patent is directed to processing requests to access or change patient records and generating and

5

transmitting messages in connection with that process. More specifically: (a) processing a request by a person or entity to access, obtain, change, alter or modify a file that contains healthcare information; (b) generating a message containing information regarding the person or entity; and (c) transmitting the message to a communication device of the individual or patient. ('048 Pat., Abstract, 2:37-55, 44:63-47:59; *see also* Claims 1, 2, and 20).

The specification does not teach any novel techniques for *how* to process requests or generate messages. Rather, the specification teaches that the claimed inventions can be accomplished using *any* computer or communication device. ('048 Pat., 15:65-16:7 (listing the same conventional computers discussed above with respect to the '040 Patent)). It does not teach modifying the conventional devices, but simply using them to carry out the disclosed steps: "At step 1603, the central processing computer 10 will receive and process the user's identification information…" (*id.* at 45:65-66); "At step 1605, central processing computer 10 will provide the requested information…" (*id.* at 46:14-15); "At step 1606, the central processing computer 10 will generate a notification report…" (*id.* at 46:44-45); "At step 1607, the central processing computer 10 will transmit the notification report to the patient or individual…" (*id.* at 46:60-61).

## III.    LEGAL STANDARD

This motion implicates standards for entering judgment on the pleadings under Rule 12(c) and evaluating patent subject matter eligibility under 35 U.S.C. § 101.

### A.    The Court May Properly Decide Patent Eligibility on a Rule 12 Motion.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).

A motion under Rule 12(c) "is governed by the same standard as a motion to dismiss for

6

failure to state a claim on which relief may be granted" pursuant to Rule 12(b)(6). *Alibris v. ADT LLC*, 2015 WL 5084231, at *4 and n.7 (S.D. Fla. Aug. 28, 2015) (citing *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*; *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12[] motion." *Genetic Techs.*, 818 F.3d at 1373 (citation omitted); *see also SAP America*, 898 F.3d at 1166 (collecting recent cases). "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Genetic Techs.*, 818 F.3d at 1374. The Federal Circuit has also "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases and affirming dismissal of complaint when plaintiff "provided no proposed construction of any terms").

## B. Abstract Ideas Are Ineligible for Patenting Under the Two-Step Test of *Alice*.

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Laws of nature, natural phenomena, and abstract ideas, however, are not eligible for patenting. *Alice*, 573 U.S. at 216. In particular, courts have identified various types of claims likely to be patent-ineligible, including those directed to "longstanding, well-known method[s] of organizing human behavior," *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d

7

1341, 1348 (Fed. Cir. 2016), "mental processes," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), and "mathematical formula[s]" or an "algorithm itself." *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972). The Supreme Court, in *Alice*, established a two-step inquiry for determining whether claims are drawn to patent-ineligible subject matter.

Step one of the *Alice* test considers whether the claim is directed to an abstract idea. 573 U.S. at 218. As applied to claims involving computerized systems, courts "consider whether the 'focus of the claims' is on a 'specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' [like organizing human behavior or mental processes] for which computers are invoked merely as a tool.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018) (quoting *Enfish*, *infra*); *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (must consider the claim's "key advance"). "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech*, 899 F.3d at 1285–86.

If the claim is directed to an abstract idea, courts move to step two and "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. This "transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* "[I]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1285–86. "Narrowing or reformulating an abstract idea does not add 'significantly more' to it." *Id.*

## IV.   ARGUMENT

The patents in-suit both are directed to patent-ineligible subject matter because their claims are directed to abstract ideas and contain no inventive concept.

### A.      The '040 Patent Is Directed to Patent-Ineligible Subject Matter.

The claims of the '040 Patent are directed to the abstract idea of sending and receiving patient information and generating and transmitting insurance claims in connection with that information. These are quintessential non-inventive, abstract concepts that cannot be patented.

#### 1.      Claim 2 of the '040 Patent is directed to an abstract idea.

The '040 Patent has three independent claims (Claims 1, 2, and 46); Claim 2 is illustrative:

2. A computer-implemented method, comprising:

[a] ***storing information*** regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, in a database or a memory device, wherein the information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, includes a healthcare record or a healthcare history of, for, or associated with, each individual of the plurality of individuals, including a healthcare record or a healthcare history of, for, or associated with, an individual, information regarding a healthcare practice of, and an insurance accepted by, each of the plurality of healthcare providers, including information regarding a healthcare practice of, and an insurance accepted by, a healthcare provider, information for processing or for storing information regarding a healthcare diagnosis or a healthcare treatment, and information for submitting an insurance claim to a healthcare insurer or a healthcare payer associated with the individual;

[b] ***receiving information*** regarding the individual with a receiver, wherein the information regarding the individual is transmitted from a first computer or from a first communication device, wherein the first computer or the first communication device is associated with or is used by the healthcare provider, and further wherein the receiver is associated with the database or the memory device and is located at a location remote from the first computer or remote from the first communication device, wherein the information regarding the individual is transmitted to the receiver via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the information regarding the individual contains information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure;

[c] at least one of ***storing the information*** regarding the individual in the database or the memory device and ***updating the healthcare record*** or the healthcare history of, for, or associated with, the individual;

[d] ***generating an insurance claim***, wherein the insurance claim is automatically generated by a processing device in response to the storing of the information regarding the individual in the database or the memory device or the updating

9

of the healthcare record or the healthcare history of, for, or associated with, the individual, wherein the insurance claim is suitable for being automatically submitted to the healthcare insurer or the healthcare payer associated with the individual or is suitable f or [sic] being automatically transmitted to a second computer or to a second communication device, wherein the second computer or the second communication device is associated with the healthcare insurer or the healthcare payer associated with the individual; and

[e] ***transmitting the insurance claim*** to the second computer or to the second communication device.

('040 Pat., 47:40-48:29 (brackets and emphasis added)). As denoted above, the steps of the claimed method relate to receiving health information (step b); storing or updating health information (steps a and c); and generating and transmitting an insurance claim based on that health information (steps d and e).

These concepts of sending/receiving information and processing/generating information, even when considered in the context of health care insurance, are abstract as a matter of law. *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (claims directed to computer program for handling insurance-related tasks by "stor[ing], retriev[ing] and manipulat[ing] data" abstract and invalid under § 101).

Claims nearly identical to Claim 2 of the '040 Patent have been found abstract in other proceedings, a strong indicator of invalidity. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). For example, in *Joao II*, the PTAB considered 21 claims with almost exact overlap with Claim 2[8] and concluded that "[t]he claims presented here are similar in that regard to those found by the Board, and affirmed by the Federal Circuit, to be directed to the 'abstract idea of billing insurance companies and organizing patient health information.'" 2017 WL 2303383, at *4 (citing *Salwan*). Notably, the claims in *Joao II* were examined ***after*** *Alice* clarified patent

---

[8] Appendix D contains a chart that compares elements of Claim 21 from *Joao II* and Claim 1 of the '040 Patent and shows direct overlap in their language.

subject matter eligibility. *See id.* Had *Alice* been the law of the land when the '040 Patent was prosecuted, its claims would have been rejected too.[9]

As relied upon by the PTAB in *Joao II*, in *Salwan*, the Federal Circuit found claims directed to the abstract idea of billing insurance companies and organizing patient health information invalid as abstract. 681 F. App'x 938, 2017 WL 957239 (Fed. Cir. 2017) (nonprecedential). The court considered claim elements reciting storing, communicating, transferring, and reporting patient health information, and using billing software to calculate a patient's bill, and concluded that "[t]his describes little more than the automation of a 'method of organizing human activity' with respect to medical information." *Id.* So too with Claim 2 of the '040 Patent.

The invocation of a "healthcare record" and "insurance claim" does not make Claim 2 any less abstract but instead merely ties the claim to a field of use. Consider that a patient or a healthcare provider could store a healthcare record on a clipboard or in a filing cabinet, transfer the applicable information to a paper insurance form, and put it in the mail. "[I]nformation storage and exchange is an abstract idea even when it uses computers as a tool or is limited to a particular technological environment." *Mortg. Appl'n Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526, 2021 WL 97347 (Fed. Cir. 2021) (unpublished).

Claim 2 further recites that the insurance claim is "*automatically generated* … in response to the storing of the information regarding the individual" and that "the insurance claim is suitable for being *automatically submitted*," but such automation is insufficient to convey eligibility. *In re Greenstein*, 782 F. App'x 1035, 1038, 2019 WL 4233554 (Fed. Cir. 2019) (nonprecedential) ("This describes no more than the automation of the longstanding fundamental economic concept of

---

[9] *Alice* applies retroactively. For example, *Alice* itself found claims of four patents unpatentable, the earliest of which—U.S. Patent No. 5,970,479—issued in 1999. *See Alice*, 573 U.S. at 212 n.1.

personal financial planning. We have routinely held that such claims are directed to abstract ideas.").

Claim 2 is directed to an abstract idea and thus the analysis turns to step 2, whether that abstract idea is imbued with an inventive concept.

### 2. Claim 2 of the '040 Patent contains no inventive concept.

Claim 2 of the '040 Patent does not contain any inventive concept that transforms it into patent-eligible subject matter. The claim does not recite anything unconventional about the claimed steps a-e, but simply invokes conventional computers and servers performing their ordinary functions to complete the recited tasks. The specification teaches nothing different, simply noting that "[t]he central processing computer 10, in the preferred embodiment, is a network computer or computer system, or any other communication device with can provide the functionality of, and which can be utilized as a central processing computer such as an Internet server computer and/or a web site server computer." ('040 Pat., 16:13-23; *see also id.* at 13:64 ("The central processing computer 10 may be a single computer or system of computers and/or may be [sic] include a plurality of computers or computer systems which are utilized in conjunction with one another."); *id.* at 14:15-20 ("The healthcare provider computer(s) 20 can communicate with, and operate in conjunction with, the central processing computer); *id.* at 14:30-35 ("The healthcare payer computer(s) 30 can communicate with and operate in conjunction with, the central processing computer 10 and/or any of the other computers and/or computer systems associated with any of the other individuals and/or entities which utilize and/or operate in conjunction with the present invention.")). This combination of human activities performed on generic computer devices is insufficient to contribute an inventive concept to the claim. *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904, 2020 WL 7334126 (Fed. Cir. 2020) (unpublished) (claims reciting only generic computer hardware, such as a "processor" not

inventive); *Mortg. Application*, 839 F. App'x 520, 526 (adding computer functionality does not confer patent eligibility to an abstract idea).

Claim 2 of the '040 Patent limits itself to the fields of healthcare information and health insurance, but these concepts do not add any inventiveness to the abstract ideas. As a matter of law, narrowing or reformulating an abstract idea does not add significantly more to it. *BSG Tech*, 899 F.3d at 1285–86; *Simio*, 983 F.3d at 1364 ("the abstract idea itself…cannot supply the inventive concept…." (internal quotations and citations omitted)).

Even when considered as an "ordered combination," the method of Claim 2 of the '040 Patent adds nothing that is not already present when the steps are considered separately. *Alice*, 573 U.S. at 225-226. As explained *supra*, the steps are directed to the abstract idea of sending and receiving patient information and generating and transmitting insurance claims in connection with that patient information. While these steps may have a logical order, they are nothing more than instructions to carry out this idea using conventional computer components. Those components do not combine to improve the sending/receiving of the healthcare record or the generation of the insurance claim. *See id.* Nor do they effect an improvement in any other technology or technical field. *See id.* This is not "enough" to transform an abstract idea into a patent-eligible invention. *Id.*

Thus, Claim 2 of the '040 Patent does not contain an inventive concept sufficient to transform the abstract idea into an eligible claim. It is, therefore, invalid under 35 U.S.C. § 101.

### 3.     None of the '040 Patent's other claims is patent eligible.

The '040 Patent has two other independent claims, Claim 1 and Claim 46, which have practically identical elements as Claim 2, just rearranged. Appendix B contains a chart that compares these three claims' elements, rearranged side-by-side, and shows their near-identical nature. Because Claim 1 and Claim 46 contain the same elements as Claim 2, and are not more than the sum of their individual parts, they likewise are directed to an abstract idea and lack an

13

inventive concept. *Alice*, 573 U.S. at 225-226.

All other claims of the '040 Patent depend from Claim 2 and attempt to narrow the abstract idea by specifying the types of information being received, generated, or transmitted or the actors involved;[10] adding yet another generic device into the mix;[11] or tacking on an extraneous step.[12] But narrowing an abstract idea does not make it any less abstract or any more inventive. *See BSG Tech*, 899 F.3d at 1287 ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way") (citing *Two-Way Media Ltd. v. Comcast Cable Comms., LLC*, 874 F.3d 1329 (Fed. Cir. 2017)); *see also Elec. Power Grp.*, 830 F.3d at 1351 (holding ineligible claims that "do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology"). None of these dependent claims do anything more than the independent claims to explain *how* to accomplish the claimed steps or specify anything other than conventional

---

[10] While the dependent claims are perhaps more specific, they are no less abstract. Some claim information regarding generic healthcare concepts, like "a symptom" (Cl. 3), "a diagnosis" (Cls. 4, 8), "a schedule" (Cl. 19), "an occurrence of an event" (Cls. 25-26), "a … treatment" (Cls. 5, 10-11, 31), or the appropriateness of a diagnosis and/or treatment (Cl. 12). Others claim information regarding actors or places involved in healthcare, like "the healthcare facility" (Cl. 15), "a second individual" (Cl. 7) and the admission of same (Cls. 22-23), "a second healthcare provider" (Cl. 14) and the availability of same (Cls. 18, 24), or "the second healthcare insurer" (Cl. 16). Some claims seem obscure, specifying information obtained with medical devices (Cls. 6, 13) or information regarding a healthcare training simulation (Cl. 30), but are still conceptual. Others simply claim information regarding the transmission, response to, or payment of an insurance claim (Cls. 27-29). Some claims are hyper-specific, claiming information regarding "the body organ" (Cl. 17), an X-ray, an MRT, a CAT scan, video information, audio information, blood pressure information, blood sugar, or pulse rate (Cls. 32-37, 40-42). Other claims specify certain types of healthcare providers, like physicians, dentists, or psychiatrists (Cls. 43-45).

[11] Claims 20-27 and 39 simply add in a third computer/communication device used by a healthcare provider and/or individual to send/receive information. Claim 38 simply specifies that the first device be wireless.

[12] Claim 9 adds an element that involves "updating" the healthcare record with information, apparently after that information is already stored.

computers to carry them out.

Because all claims of the '040 Patent are directed to abstract ideas and lack inventive concepts, they are invalid under 35 U.S.C. § 101.

**B.    The '048 Patent Is Directed to Patent-Ineligible Subject Matter.**

The claims of the '048 Patent are directed to the abstract idea of processing requests to access and change patient information and generating messages in connection with that process. These are quintessential non-inventive, abstract concepts that cannot be patented.

**1.    Claim 2 of the '048 Patent is directed to an abstract idea.**

The '048 Patent has three independent claims (Claims 1, 2, and 20); Claim 2 is illustrative:

2. A computer-implemented method, comprising:

[a] ***processing, with a processor, a request*** by a person or an entity to at least one of access, obtain, change, alter, and modify, information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file of the individual or patient wherein the individual's or patient's healthcare record or the individual's or patient's healthcare file of the individual or patient contains healthcare information or healthcare-related information personal to the individual or patient;

[b] ***generating a message*** containing at least one of information regarding the person or the entity making the request and identification information regarding the person or the entity making the request, and further wherein the message contains an actual change, alteration, or modification, sought to be made or made to the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file; and

[c] ***transmitting the message*** to a communication device of the individual or patient via, on, or over, a communication network, wherein the message is transmitted to the communication device of the individual or patient at least one of during, concurrently with, at a same time as, and prior to a completion of, at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file by the person or the entity, or at least one of during, concurrently with, at a same time as, and prior to a completion of, a processing of the request to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

('040 Pat., 55:50-56:16 (brackets and emphasis added)).

As denoted above, the steps of the claimed method relate to processing a request for information (step a) and then generating and transmitting a message in response to that request (steps b and c). These concepts are abstract as a matter of law. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021) (claims directed to controlling access or limiting permission to resources recite an abstract mental process); *Elec. Power Grp.*, 830 F.3d at 1354 ("a process of gathering and analyzing information of a specified content, then displaying the results" abstract); *FairWarning IP LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) ("collect[ing] information," "analyz[ing] the information according to one of several rules," and "provid[ing] notification" abstract).

For example, in *Joao I*, the PTAB considered 50 claims with almost exact overlap with Claim 2,[13] and held that they were directed to "the abstract idea of sending a message," which "has been determined to be a method of organizing human activities."  2017 WL 2377811, at *3 (citing *EasyWeb Innov., LLC v. Twitter, Inc.*, 689 F. App'x 969, 2017 WL 1969492, at *2 (Fed. Cir. May 12, 2017)). As with the claims in *Joao II*, discussed *supra*, the PTAB also held the claims in *Joao I* ineligible under a ***post**-Alice* framework. Had *Alice* been in place when the '048 Patent was prosecuted, its claims would have met a similar fate.[14]

Similarly, in *Joao Bock Transaction Sys., LLC v. Fid. Nat. Info. Servs., Inc.*, the Middle District of Florida considered claims from another patent pursued by Mr. Joao and found them abstract and invalid. 122 F. Supp. 3d 1322, 1331 (M.D. Fla. 2015) (citing *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 522 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015)). Those claims were directed to the abstract idea of using a processing device

---

[13] Appendix E contains a chart that compares elements of Claim 41 from *Joao I* and Claim 2 of the '048 Patent and shows direct overlap in their language.

[14] *See supra* note 9.

to monitor bank accounts and generate notifications to the account user. They are strikingly similar to the claims of the '048 Patent—they involve storing information concerning a transaction, processing that information, generating a signal regarding the information, etc.—just employed in a different context (banking v. health care). *Id.* at 522-523.

### 2.    Claim 2 of the '048 Patent contains no inventive concept.

Claim 2 does not contain any inventive concept that transforms it into patent-eligible subject matter. The '048 Patent does not teach or claim any novel means of requesting or processing information or of generating and transmitting messages. Instead, the specification of the '048 Patent uses language identical to that discussed above with respect to the '040 Patent to teach that "***any*** computer or communication device" can be used to carry out these activities. ('048 Pat., 15:65-16:7 (emphasis added)).

In addition to the elements that define the abstract idea discussed above, Claim 2 includes limitations directed to the *type* of information being processed and messages being generated, but these elements represent field-of-use limitations that are recited at a high level of generality that is insufficient to transform the identified abstract idea into an eligible claim. *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."); *Alice*, 573 U.S. at 222 ("'Simply appending conventional steps, specified at a high level of generality,' [is] not '*enough*' to supply an 'inventive concept.'") (quoting *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 55, 82, 77, 72 (2012) (emphasis in original)). The specification, which teaches only off-the-shelf conventional devices, provides no inventive concept. *See Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020) (no inventive concept for abstract verification method where specification taught the technological components were "off-the-shelf, conventional computer, storage, network, and

17

display technology"), *cert. denied*, 141 S. Ct. 1053 (2021); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) (no inventive concept where the background describes claimed steps as conventional), *cert. denied*, 140 S. Ct. 2515 (2020).

While the steps of Claim 2 of the '048 Patent may have a logical order, that order adds no inventive concept. *Alice*, 573 U.S. at 225-226. The claimed components do not combine to improve the processing, generating, or transmitting of information. *See id.* This is not "enough" to transform an abstract idea into a patent-eligible invention. *Id.*

### 3.    None of the '048 Patent's other claims is patent eligible.

The '048 Patent has two other independent claims, Claim 1 and Claim 20, which have near-identical elements as Claim 2, just rearranged. Appendix C contains a chart that compares these three claims' elements, rearranged side-by-side, and shows their overlapping elements. Again, the various orders add no inventiveness, as the claimed components fail to combine into something more than the sum of their parts. *Alice*, 573 U.S. at 225-226.

Claim 20 adds an element for "receiving information…" ('048 Pat., 59:55-60:10) to the other recited steps of storing, processing, generating, and transmitting, but this "receiving" element does not save the claim from abstractness, as "*collecting information*, analyzing it, and displaying certain results of the collection and analysis" are quintessential ineligible abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1353, 1355 (emphasis added).

All other claims of the '048 Patent depend from Claim 2 and add elements that attempt to

QB\73744451.4

narrow the abstract idea by specifying types of information,[15] individuals,[16] or devices,[17] but narrowing an abstract idea does not make it any less abstract or any more inventive. *Id*. at 1355 ("merely selecting information, by content or source, for collection, analysis, and display" is insufficient to provide inventive concept); *see BSG Tech*, 899 F.3d at 1287 ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way") (citing *Two-Way Media*, 874 F.3d 1329). None of the dependent claims explain *how* to accomplish the claimed steps or specify anything other than conventional computers or devices to carry them out.

Because all claims of the '048 Patent are directed to abstract ideas and lack inventive concepts, they are invalid under 35 U.S.C. § 101.

### C.   No Claim Construction Issues or Factual Disputes Prevent the Court From Deciding this Issue at this Stage of the Case.

This motion is ripe for decision now. The claims do not require formal construction for this analysis, as no reasonable interpretations could change the claims' abstract nature. While they invoke some healthcare terminology, multiple terms are explicitly defined in the specifications of both patents. ('040 Pat., 4:9-23, 13:31-42; '048 Pat., 13:66-14:5, 14:22-23). Decapolis itself did not propose any terms for construction. (*See* Dkt. 28-1, at 1).

---

[15] Many of the dependent claims merely specify information regarding broad health concepts, like "confirming the appointment" (Cl. 22), admitting an individual (Cls. 13-14, 35), "a symptom" (Cl. 30), "an examination finding" (Cls. 4-6), "a diagnosis" (Cl. 32, 34), whether a diagnosis "is appropriate" (Cls. 9, 34), "a treatment" or "a treatment plan" or "a prescribed treatment" (Cls. 7-8, 22, 31, 33-34), "a schedule" (Cls. 21, 23), locating a healthcare facility or insurer (Cls. 24, 26), confirming a healthcare provider is available (Cl. 36), locating medical supplies (Cl. 25), "an insurance claim for submission" (Cl. 15), and limitations on allowing or denying access (Cls. 3, 27, 37-40). Other claims are even more high-level, specifying "information regarding the person or the entity making the request," (Cl. 16), information transmitted from the device used by the patient or healthcare provider (Cls. 17-18), or information comprising an activity report (Cl. 19).

[16] Claims 11-12 specify that the message be transmitted to a device associated with a healthcare provider or healthcare insurer. Claims 28-29 involve the same abstract concepts but apply to a "second individual."

[17] Claim 10 merely specifies a "wireless device."

Beyond that, no factual issues would prevent the Court from deciding this motion now. The specifications teach that the means of carrying out the claimed methods and systems are conventional. ('040 Pat., 4:9-23 (explaining "the central processing computer(s), as well as each of the computers or communication devices associated with each of the herein-described users, patients, providers, payers, and/or intermediaries" employ conventional components); '048 Pat., 4:16-30 (same)). These teachings are sufficient to decide this motion; no discovery is needed. *See Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 958, 2021 WL 855856 (Fed. Cir. 2021) (unpublished) (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." (citation omitted))).

Thus, this case is unlike *Berkheimer v. HP Inc.*, where the Federal Circuit examined whether the improvement described in the specification was captured in the claims. 881 F.3d 1360, 1369 (Fed. Cir. 2018). For those claims that recited the alleged improvement, the Federal Circuit found a genuine "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive feature, the Federal Circuit concluded that they were directed to patent-ineligible subject matter under § 101. *Id.* Here, neither the claims nor the specification describes any unconventional components or use of conventional components in some unconventional manner.

Accordingly, the claims' eligibility is ripe for the Court's consideration now.

## V.     CONCLUSION

For the foregoing reasons, Epic respectfully requests that the Court GRANT this motion and find that the claims of the '040 Patent and the '048 Patent are invalid, enter judgment in favor of Epic, and dismiss Decapolis' counterclaims with prejudice.

Dated: May 20, 2022

Respectfully submitted,

QUARLES & BRADY LLP

*/s/ Kelli A. Edson*
Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195
Tel.: (813) 387-0300
Fax: (813) 387-1800
kelli.edson@quarles.com
lynda.dekeyser@quarles.com
rebecca.wilt@quarles.com
DocketFL@quarles.com

Martha Jahn Snyder, *Pro Hac Vice*
Anita Marie Boor, *Pro Hac Vice*
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
martha.snyder@quarles.com
anita.boor@quarles.com

*Counsel for Plaintiff Epic Systems
Corporation*

21

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that counsel of record who are deemed to have consented to

electronic service are being served on May 20, 2022 with a copy of this document via the Court's

CM/ECF system:

Marc J. Kesten, P.L.
Marc J. Kesten
9220 NW 72nd Street
Parkland, FL 33067
marc@kestenlex.com
(954) 600-9500

Garteiser Honea, PLLC
Christopher Honea
119 West Ferguson
Tyler, Texas 75702-7203
chonea@ghiplaw.com
ghdecapolis@ghiplaw.com
(415) 785-3762

*/s/ Kelli A. Edson*
Kelli A. Edson

22