# EXHIBIT F



33 East Main Street  
Suite 900  
Madison, WI  53703  
608-251-5000  
Fax 608-251-9166  
www.quarles.com

Attorneys at Law in  
Chicago  
Indianapolis  
Madison  
Milwaukee  
Minneapolis  
Naples  
Phoenix  
Tampa  
Tucson  
Washington, D.C.

Writer's Direct Dial: 608-283-2429  
E-Mail Martha.Snyder@quarles.com:

May 31, 2022

VIA EMAIL (chonea@ghiplaw.com)  
Christopher A. Honea  
Garteiser Honea, PLLC  
119 W Ferguson St.  
Tyler, TX 75702

RE:   *Epic Systems Corporation v. Decapolis Systems, LLC* - Discovery Responses

Dear Chris:

We write regarding our May 31, 2022 meet-and-confer call, Decapolis Systems, LLC's ("Decapolis") April 28, 2022 Preliminary Infringement Contentions, Decapolis' April 28, 2022 Objections and Responses to Plaintiff's First Set of Interrogatories, and Decapolis' April 28, 2022 Objections and Responses to Plaintiff's First Set of Requests for Production. As set forth in more detail below, Decapolis' preliminary infringement contentions, discovery responses, and document production must be supplemented.

Consistent with Local Rule 26.1(g)(1), in order to preserve Epic Systems Corporation's ("Epic") rights and to allow the parties time to meet and confer to discuss the issues detailed below, we are requesting an additional seven (7) days to extend the thirty (30) day period set forth in L.R. 26(g)(1) from May 31, 2022 to June 7, 2022. Please confirm in writing as soon as possible that Decapolis consents to the 7-day extension. Please confirm in writing that Decapolis will supplement its discovery responses as detailed below by no later than **Friday, June 3, 2022**. Otherwise, please provide dates and times you are available on and/or between **June 1-3, 2022** to meet and confer.

### 1. **Decapolis' Preliminary Infringement Contentions and Discovery Responses are Insufficient to enable Epic to Engage in Meaningful Discovery**

Decapolis's Preliminary Infringement Contentions have failed to define the specific scope of alleged infringement in this case, particularly by not identifying specific accused products and by failing to indicate which asserted patent claims apply to any specific accused products. *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC(EMC), 2010 WL

QB\74231415.1

Christopher A. Honea
May 31, 2022
Page 2

363341, at *1 (N.D. Cal. Feb. 1, 2010) ("The infringement contentions define the scope of the infringement case and provide the defendant notice of what is actually at-issue—e.g. which specific products are accused, which patent claims apply, and which theories of infringement will be advanced."). As sampled below, Decapolis' Preliminary Infringement Contentions are insufficient and fail to provide Epic notice and the Court a meaningful standard to judge Decapolis' conduct later in the case.

Decapolis purports to define the "Accused Instrumentalities" as "an apparatus (including the Epic software having integrated services such as, patient engagement, MyChart, Telehealth, Medical Billing, etc. running on a computer system) for providing healthcare information and/or healthcare-related information." This amounts to a general definition of Epic's entire software platform. Such a broad sweeping definition is not proportional to the needs of the case and is not targeted to the limited scope of the asserted claims at issue.

This issue is particularly salient regarding the discussion of accused product source code production during the May 31, 2022 meet-and-confer call. Decapolis served its Preliminary Infringement Contentions ("PICs") on April 28, 2022, with a case caption from the W.D. of Texas. In its discovery responses, dated May 16, 2022, Epic complained that the definition of "Accused Instrumentalities," that pointed to the PICs, was overbroad and unduly burdensome, as well as vague and ambiguous. During today's meet-and-confer, we further explained that, despite Decapolis' assertion that all the information Epic needs in order to provide discovery on the requested source code for the accused products is in the PICs, neither the PICs for either asserted patent nor the discussion during the meet and confer clarify which cohesive pieces of software are allegedly at-issue. Epic understands that, at most, MyChart, MyChart Bedside, and Revenue Cycle are at-issue in this suit, which you refused to agree or disagree with during our meet-and-confer.

An example of the overly broad and vague allusions to which specific products are being accused, comes from page 2 of the Preliminary Infringement Contention claim chart for '040 Patent, provided below. The screenshot of Epic's website provides an illustrative display of the wide range and high volume of different products that Epic offers. There is no description or discussion as to what the red underlining means.

Christopher A. Honea
May 31, 2022
Page 3



*(See* '040 Pat., Prelim. Infr. Claim Chart, at 2.) This exact same image can also be found on page 2 of the Preliminary Infringement Contention claim chart for the '048 Patent, with no greater detail or specificity provided. In fact, the majority of the "detail" provided in the PIC claim charts for each patent comprises these vague, underlined images, and many have no accompanying description.

Without fully understanding which of Epic's products are the actual "Accused Instrumentalities" Epic is unable to provide meaningful discovery at least in regard to product source code and technical documents. Courts have held that a patent holder seeking an opposing party's source code needs to be proportionate to the needs of the case and that the requested source code be specific to the accused products at issue. Indeed, as was a topic of discussion during the May 31 meet-and-confer, courts have denied granting motions to compel source code for these very reasons. *Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00362-PJH (LB), 2018 WL 2002979 (N.D. Cal. Apr. 30, 2018) (denying patent holder's (Uniloc's) motion to compel source code because the request for "all source code" was disproportionate to the needs of the case because the entirety of Apple's source code covered features unrelated to the asserted claims—holding the requested source code "encompass hundreds or thousands of features wholly unrelated to those claims"); *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11 CV 458, 2015 WL 12734894 (N.D. Ohio July 10, 2015) (denying patent holder's motion to compel source code for software product because "[patent holder] wholly fails to identify any aspect of CTMS that it believes infringes on its patent" and even a fair reading of the allegations did not support the conclusion that defendant's broad source code request encompassed software that was not asserted as infringing the asserted patent).

Nevertheless, at the end of our May 31, 2022 call we agreed that tomorrow, June 1, 2022 we would follow-up on if/when (and where) we would be able to produce source code as to those components of Epic's software system we have identified as relevant based on the Preliminary Infringement Contentions. While we intend to provide the promised follow-up, Decapolis must,

QB\74231415.1

Christopher A. Honea
May 31, 2022
Page 4

by **June 3, 2022**, supplements its PICs to limit the asserted claims to the individual or specific pieces of Epic software Decapolis contends are infringing and narrow the accused instrumentalities to be something more narrow than the entirety of Epic's software offering. If Decapolis refuses to supplement its PICs we will consider this matter ripe for the court's intervention.

### 2. Decapolis' Deficient Interrogatory Responses

While Decapolis has provided answers to the following interrogatories, the responses provided are either insufficient or incomplete, at least because they provide only general, and no specific objections to the interrogatories. Accordingly, please respond to all portions of the interrogatories as outlined below immediately, but no later than **June 3**, or admit that that the information provided constitutes all relevant information that Decapolis possesses on the topic. If Decapolis has any questions regarding the insufficiency of each interrogatory response, please provide a time that works to meet and confer and Epic will happily walk through each interrogatory response with you.

#### a. *Failure to Provide Verification Statement*

As an initial matter, Decapolis has yet to provide a verification statement from a Decapolis agent attesting that the information is true and correct.

#### b. *Interrogatory Responses Referencing Decapolis' Preliminary Infringement Contentions*

In response to Interrogatories 1, 3, 10, and 12 Decapolis merely "refer[s] Plaintiff to its Infringement Contentions." As argued above, Decapolis' PICs are deficient and lacking in specificity and detail sufficient to enable Epic to participate in any meaningful discovery. No other specific objections are provided and each interrogatory response merely incorporates the general objections provided earlier. Accordingly, these responses are wholly deficient—no actual discussion of each topic is engaged in and no real response is actually provided.

For example, Interrogatory No. 1 requests Decapolis Identify all claims of the Patents-in-Suit that Decapolis contends that Epic and/or use of Epic's software has infringed or is infringing, and for each: (1) Identify Your interpretation of each claim; (2) Identify each product or service You allege is made, used, sold, offered for sale, or imported that You contend infringes the claim; and (3) provide a description in a claim chart of how each claim limitation is found in each product or service that You allege infringes the claim, whether each such limitation is found literally or under the doctrine of equivalents, and whether such infringement is alleged to be direct, induced or contributory in nature. Because the infringement contentions do not contain a detailed analysis interpreting each claim, identifying each product, nor provide a description of how each claim limitation is found in each product, and nor do the PIC claim charts (indeed, if a picture is worth a thousand words Decapolis' extensive use of vague

Christopher A. Honea
May 31, 2022
Page 5

screenshots would equate to claim chart documents much longer than they presently are), it is impossible to determine Decapolis' theories regarding the interrogatory's demand.

Interrogatory No. 10 makes a request to identify for each claim of the Patents-in-Suit the relevant technical field and the level of technical knowledge, schooling, experience, training, and expertise of a Person having ordinary skill in the art of the subject matter of that field. The infringement contentions are wholly devoid of this information and Decapolis' response to ROG No. 10 is deficient.

Interrogatory No. 12 requests information on whether Decapolis seeks damages from Epic for any alleged infringement of the Patents-in-Suit and, if so, all factual and legal bases for such damages claims, including, but not limited to, the amount of each claim and an identification of each legal theory under which damages are sought and explaining the calculations supporting all damages that Decapolis claims. Decapolis' PICs are wholly devoid of any of the damages related information sought in ROG No. 12. The infringement contentions do not contain a detailed analysis of, for example, the categories of damages claim at issue or Decapolis' theories as to its damages demand.

Decapolis must, no later than **June 3**, supplement its interrogatory responses to provide the requested information.

### c. *Interrogatory Responses Responding by Referencing the Counterclaims*

In response to Interrogatories 5-8, 10-12, and 19 Decapolis merely "refer[s] Plaintiff to its Counterclaims." Similar to Decapolis' responses referencing its PICs, Decapolis half-hearted attempted to shirk its discovery responsibilities by referring to its counterclaims fails. As detailed below, Decapolis' counterclaims do not contain the information requested in Interrogatories Nos. 5-8, 10-12, and 19.

Interrogatory No. 5 seeks, for each claim of the Patents-in-Suit, for Decapolis to state when Decapolis contends that alleged infringement by Epic or use of Epic's software offerings began and explain how Decapolis first became aware of the alleged infringement, and identify each Person with knowledge of the foregoing and all Documents Relating to the foregoing. Decapolis' counterclaims wholly fail to state how Decapolis first became of the alleged infringement or identify each and every person with knowledge.

Interrogatory No. 6 seeks, for each Patent-in-Suit, state whether Decapolis contends Epic's alleged infringement is or has been willful and, if so, explain the bases for that contention, including, but not limited to, identifying when and how Epic was put on notice of the alleged infringement, and identify each Person with knowledge of the foregoing and all Documents Relating to the foregoing. Decapolis' counterclaims fail to explain in detail the bases for any contention that Epic's alleged infringement is willful, when and how Epic was put on notice, and each and every person with knowledge of the foregoing.

Christopher A. Honea
May 31, 2022
Page 6

Interrogatory No. 8 seeks, each claim of the Patents-in-Suit, describe all facts and circumstances Relating to the first written description, offer for sale, sale, public disclosure, public use, and disclosure to another of the alleged invention, including, without limitation, the identity of the Persons involved in each such event, the date on which each such event occurred, and the identity of relevant Documents Referring or Relating thereto. Decapolis' counterclaims fail to provide any of this requested information.

Interrogatory No. 10 seeks, for each asserted claim of the Patents-in-Suit, for Decapolis to identify the relevant technical field and the level of technical knowledge, schooling, experience, training, and expertise of a Person having ordinary skill in the art of the subject matter of that field. Decapolis' counterclaims fail to provide any of this information.

Interrogatory No. 11 seeks, for each asserted claim of the Patents-in-Suit, Decapolis to identify in detail the objective indicia of non-obviousness, if any, that Decapolis contends supports the validity of the claim. Decapolis' counterclaims fail to provide this information at any level of detail.

Interrogatory No. 12 requests information on whether Decapolis seeks damages from Epic for any alleged infringement of the Patents-in-Suit and, if so, all factual and legal bases for such damages claims, including, but not limited to, the amount of each claim and an identification of each legal theory under which damages are sought and explaining the calculations supporting all damages that Decapolis claims. As with the PICs, Decapolis' counterclaims do not provide any information regarding the amount of each damage claim, an identification of each legal theory under which damages are sought, or an explanation of the calculations supporting all damages that Decapolis claims.

Interrogatory No. 19 seeks Decapolis it identify the factual and legal bases for any contention that the Patents-in-Suit are not directed to patent ineligible subject matter. Decapolis' counterclaims do not provide this information.

Accordingly, Decapolis must, no later than **June 3**, supplement its interrogatory responses to provide the requested information,

### d.  *Interrogatory Responses Pursuant to Rule 33(d)*

For Interrogatories Nos. 4, 11, 15, 17, and 18 Decapolis made boilerplate objections and responded pursuant to Fed. R. Civ. P. 33(d). However, despite your demand during the May 31, 2022 for Epic to identify documents produced under Rule 33(d) by Bates number, Decapolis' responses are devoid of any information to allow Epic to discern if any responsive documents have been produced. As such, Decapolis has not its obligation under Rule 33 and Epic is unable to ascertain what information, if any, has been provided responsive to Interrogatory Nos. 4, 11, 15, 17, and 18.

Christopher A. Honea
May 31, 2022
Page 7

Accordingly, Decapolis must, no later than **June 3**, supplement its interrogatory responses to provide the bates numbers to identify the documents it ahs produced pursuant to Rule 33(d). Once Decapolis supplements to provide this information, Epic reserves its rights under L.R. 26.1(g)(1) to follow up regarding remaining deficiencies in Decapolis' responses and move to compel if Decapolis remains deficient.

### e.  *Refusal to Provide a Response to Interrogatory No. 16*

Interrogatory No. 16 seeks Decapolis to state whether any Person other than You that has a financial interest (whether direct or indirect) in the outcome of this Litigation or is providing financial assistance to (or otherwise supporting) this Litigation, by identifying the names of such Person, and identifying all Related Documents, including without limitation any agreements entered into by those Persons Relating or Referring to this Litigation.  Decapolis responded by making boiler plate objections and refused to provide a response.  Decapolis response does not articulate what request it is relying on to refuse production of the relevant information sought. Nor does Decapolis provide what information, if any, it is withholding and based on which objection.

Accordingly, Decapolis must, no later than **June 3**, supplement its interrogatory responses to provide this information.  Otherwise, please provide your availability between **June 1 and June 3** to meet and confer on this Interrogatory.

### 3. **Decapolis' Failure to Produce Requested Documents**

In response to Epic's First Set of Requests for Production (Nos. 1-39), Decapolis did not provide any specific objections and instead simply responded as follows:

> Decapolis incorporates its General Objections recited above as if fully set forth herein.
>
> To the extent that Decapolis understands these Requests, subject to and without waiving the foregoing Objections, Decapolis responds as follows:
>
> Decapolis will produce relevant, responsive, and non-privileged documents that are in its possession, custody, or control that can be located after a reasonably diligent search.

While Decapolis agreed to produce documents for each and every one of Epic's Requests for Production, Decapolis has failed to provide any documents for the large majority of the requests. Given Decapolis' vague response and agreement to produce documents, it is therefore unclear when Decapolis expects to provide additional documents, or which documents it contends it ahs fully satisfied its obligation.

Accordingly, please provide your availability between **June 1 and June 3** to meet and confer regarding Decapolis' failure to meet its obligations and provide all documents in its possession, custody, or control that are responsive to Request Nos. 1-39.

QB\74231415.1

Christopher A. Honea
May 31, 2022
Page 8

      Thank you for your prompt attention to this matter. Please let us know if you have any questions or concerns.

                                            Best Regards,

                                            /s/ Martha Jahn Snyder

                                            Martha J. Snyder

Cc: Counsel of Record

QB\74231415.1

**Loken, Bryce A. (MAD x2608)**

| | |
|---|---|
| **From:** | Snyder, Martha J. (MAD x2429) |
| **Sent:** | Tuesday, May 31, 2022 11:02 PM |
| **To:** | Christopher Honea; randall garteiser |
| **Cc:** | Loken, Bryce A. (MAD x2608); Edson, Kelli A. (TPA x5268) |
| **Subject:** | 2022.05.31 - Snyder to Honea re Decapolis' Discovery Responses(74231415.1).pdf [QBLLP-ACTIVE.FID42037694] |
| **Attachments:** | 2022.05.31 - Snyder to Honea re Decapolis' Discovery Responses(74231415.1).pdf |

Counsel - Please see attached.

Best regards,
Martha Snyder



**Martha Jahn Snyder** / Partner
Pronouns: She/Her/Hers
martha.snyder@quarles.com / LinkedIn BIO vCard
**Quarles & Brady LLP**
33 East Main Street, Suite 900 / Madison, WI 53703-3095
Office 608-283-2429 / Cell 607-351-1112 / quarles.com
Assistant Hailey Carvalho 608-283-2487

VISIT our COVID-19: Guidance for Clients page for the latest updates from Q&B attorneys

**CONFIDENTIALITY NOTICE:** This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.