UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80173-CV-MIDDLEBROOKS

EPIC SYSTEMS CORPORATION,

    Plaintiff/Counter-Defendant,

v.

DECAPOLIS SYSTEMS, LLC,

    Defendant/Counter-Plaintiff.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

THIS CAUSE is before the Court on Plaintiff/Counter-Defendant Epic System Corporation's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), filed on May 20, 2022. (DE 35). The Motion is fully briefed. (DE 38; DE 44). For the following reasons, the Motion is granted.

### BACKGROUND

This is a patent-infringement case over two patents: U.S. Patent No. 7,490,048 ("'048 Patent") and No. 7,464,040 ("'040 Patent"). The asserted patents are "nearly identical except (a) their abstracts focus on different aspects of managing patient information and (b) the '048 Patent includes a handful of additional figures and paragraphs of text . . . ."[1] (DE 35 at 4). Defendant/Counter-Plaintiff Decapolis Systems, LLC ("Defendant") owns the patents.[2]

---

[1] This description is taken from Plaintiff's Motion because Defendant does not distinguish the patents anywhere in its briefing or counterclaims. Defendant also does not dispute Plaintiff's characterization of the *similarity* between the patents.

[2] The named inventor of both patents is Raymond Anthony Joao. (DE 35 at 4).

1

Defendant is a Florida limited liability company that appears to be in the business of attaining rights to patents and then enforcing those rights against allegedly infringing parties. (DE 35 at 3). Plaintiff is a Wisconsin corporation that is in the "healthcare software industry and offers solutions to manage electronic health records." *Id.*

The '040 Patent is titled "Apparatus and Method for Processing and/or for Providing Healthcare Information and/or Healthcare-related Information." (DE 27-1). Defendant alleges that Plaintiff infringes on "at least Claims 1 and 46" of the '040 Patent. (DE 18 ¶ 56). Claim 1 recites an apparatus comprising a receiver, database, and processor that allows for the collection and storage of patient information (*e.g.*, results of an exam, patient's health insurance plan, etc.) in a central database accessible, via the internet, by various entities (*e.g.*, healthcare providers and patients). (DE 27-1 at 50-51). Claim 46 recites a computer-implemented method that does the same except, in addition, it automatically generates and transmits an insurance claim in response to the data inputted by any given individual with access to a relevant receiver. (*Id.* at 55).

The '048 Patent has the same title. (DE 27-2). Defendant alleges that Plaintiff infringes on "at least Claims 1, 2, 10, 20, [22-40]." (DE 18 ¶ 34). As is relevant to Defendant's counterclaims, the '048 Patent is directed "(a) processing a request by a person or entity to access, obtain, change, alter or modify a file that contains healthcare information; (b) generating a message containing information regarding the person or entity; and (c) transmitting the message to a communication device of the individual or patient." (DE 35 at 6).

In April 2021, Defendant (Decapolis) sued Plaintiff (Epic) in the Western District of Texas alleging that Epic's software infringed on the above patents. (*Id.* at 3). Soon after, Decapolis also

sued two of Epic's customers for the same.[3] Decapolis then voluntarily dismissed without prejudice its action against Epic. In response, on February 2, 2022, Epic initiated this action against Decapolis for declaratory judgment that its software does not infringe and that the patents are invalid. (DE 1; DE 27). Decapolis filed counterclaims alleging that Epic is infringing on its patents. (DE 18). On May 20, 2022, Epic moved for judgment on the pleadings. (DE 35). And on June 13, 2022, I granted Epic's Motion to Stay discovery and all deadlines contained in the Pretrial Scheduling Order until the Court rules on Epic's Motion for Judgment on the Pleadings. (DE 39).

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "'Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'" *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Courts in this district have long held that a motion for judgment on the pleadings pursuant to Rule 12(c) "is governed by the same standard as a motion to dismiss for failure to state a claim on which relief can be granted [under Rule 12(b)(6)]." *See, e.g., Alibris v. ADT LLC*, 2015 WL 5084231 at *4 (S.D. Fla. Aug. 28, 2015). Accordingly, "'[w]e must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party.'" *Samara*, 38 F.4th at 149.

---

[3] As far as I can tell from publicly available documents, those cases are stayed pending resolution of this case.

## DISCUSSION

In Part I, I address Defendant's assertion that claim construction and discovery are required prior to assessing patent eligibility under § 101. I find that it is not. In Part II, I apply the *Alice* Framework to determine whether Patents '040 and '048 are directed at eligible subject matter under § 101. I find that they are not.

### I.      Claim Construction and Other Factual Disputes

Defendant argues that Plaintiff's Motion is premature for two reasons. First, because this Court has not performed claim construction of "terms, such as 'processing device, memory device, and transmitter.'" (DE 38 at 19). Second, because there are purported disputes of fact that preclude the Court from making a proper determination under § 101. (DE 38 at 1).

Starting with the first, claim construction, Defendant notes that the Court in the Western District of Texas performed claim construction. However, as Defendant states, the court "found all terms were not indefinite and assigned plain and ordinary meaning to the terms." *Id.* Plaintiff responds that "neither the claims nor the specification describes an unconventional component[] or use of conventional components in some unconventional manner." (DE 35 at 20).

"Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) (citing *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)). "As a result, if the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *Id.* Notwithstanding, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014).

Here, Defendant does not provide a proposed construction of the claim terms. In fact, on May 25, 2022, pursuant to this Court's Pretrial Scheduling Order, Defendant represented that "[n]o terms require specific construction, and all terms should be assigned their respective plain and ordinary meanings." (DE 39-3). Given Defendant's lack of proposed construction, its own May 25 representation, and this Court's reading of the claim terms, I assign each claim term their respective "plain and ordinary meaning."

Moving on to the second, general factual disputes, Defendant's rely heavily on *Aatrix Software, Inc. v. Green Shades Software*, Inc., 882 F.3d 1121 (Fed. Cir. 2018)[4] for the proposition that its counterclaims raise factual disputes about "what was, and what was not, well-understood, routine, and conventional in the art as of December 1999." (DE 38 at 1). "The patent eligibility inquiry may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Notwithstanding, the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

*Aatrix* is inapposite. In *Aatrix*, the Federal Circuit held that it was erroneous for the district court to deny leave to amend "because at that stage there certainly were allegations of fact that, if Aatrix's position were accepted, would preclude the dismissal." *Aatrix*, 882 F.3d at 1126. In doing so, the court explained that the "district court denied [leave to amend], without explanation . . . . "

---

[4] The Parties submitted various Notices of Supplemental Authority. All but one cited controlling case law. (DE 70). The single controlling case was put forth by Defendant and is relied on for the same proposition as that in *Aatrix*. *See Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*, No. 2021-2167 (Fed. Cir. September 28, 2022) (explaining that "patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes").

5

*Id.* The "allegations of fact" at issue in *Aatrix* alleged improvements to the *computer*, like "saved storage space both in the users' computers' RAM . . . and hard disk . . . ." *Id.* at 1127.

Here, Defendant makes no relevant allegations of fact that would require further fact-finding prior to a determination of eligibility under § 101. All Defendant contends is that its "Patents represent substantial technological advancements in the medical billing service industry, which were unconventional at the time." (DE 18 ¶ 10). Even taking this allegation as true, it does not preclude this Court's ability to examine the Patents' eligibility under § 101 because the alleged improvements, viewed in light of the Specifications and Claims (more on this below), are nonetheless ineligible under § 101.

One further point on this issue is worth noting. Defendant moved to amend its counterclaims on October 3, 2022. (DE 72). Defendant sought to attach an expert report to its counterclaims that essentially stated the Patents were eligible under § 101. On November 28, 2022, I entered an Order Denying Defendant's Motion. (DE 77). In that order—unlike the district court in *Aatrix*—I explained at length why, under Fed. R. Civ. P. 15 and 16, I denied Defendant's request for leave to amend.[5] Defendant's proposed expert report would not have precluded this Court's ability to examine the Patents' eligibility under § 101 because it does not raise any plausible factual disputes after drawing all reasonable inferences in favor of Defendant.

Having found that claim construction and fact development are not required prior to assessing patent eligibility, I move on to the § 101 analysis.

---

[5] See Order Denying Defendant's Motion for Leave to File First Amended Counterclaims and Request for Hearing (DE 77) for further detail.

## II. Patent Eligibility

Section 101 of the Patent Act defines the subject matter eligible for patent protection as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The Supreme Court "has long held that this provision contains an important implicit exception[:] 'laws of nature, natural phenomena, and abstract ideas' are not patentable.'" *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 70 (2012). The reason for this is that "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id.* at 71. However, some patents "transform" those tools into "something more," making them patent eligible. *See Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217 (2014).

In *Alice*, the Supreme Court outlined the now-familiar *Alice* Framework to determine patent eligibility. There are two steps to the framework. First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If not, then the inquiry stops because the patent claims *eligible* subject matter. If so, then the court moves on to step two. Under step two, the court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221. Plaintiff argues that Defendant's patents fail at both steps. I will take each in turn.[6]

---

[6] Given the near-identical nature of the two patents at issue, I will analyze them together and make distinctions when appropriate.

### A. *Alice* Step One

Under step one, I must first determine whether the relevant claims of Patents '040 and '048 are directed to an abstract idea.

"The 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject.'"[7] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018) (citing *Alice*, 573 U.S. at 217-21). "Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility." *Alice*, 573 U.S. at 223 (citation and internal quotation marks omitted). Relatedly, it has been "consistently held . . . that claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG Tech*, 899 F.3d at 1286; *In re TLI Commc'ns LLC Patent Litig*, 823 F.3d 607, 613 (Fed. Cir. 2016) (holding claims were directed to an abstract idea despite the claims' recitation of telephone units and servers); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding claims were directed to an abstract idea despite the claims' recitation of a scanner). If, however, the software or hardware components "make non-abstract improvements to computer technology," then the invention is directed to patent-eligible subject matter. *Enfish*, 822 F.3d at 1335. Thus, the issue is whether "the 'focus of the claims' is on a

---

[7] This paragraph is an excerpt from *Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 2019 WL 1173448 (S.D. Fla. 2019) (Marra, J.), *aff'd, Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020). For ease of reading, it is not placed in a block quote.

"specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *BSG Tech*, 899 F.3d at 1286 (quoting *Enfish*, 822 F.3d at 1336).

The Federal Circuit has held that a patent very similar to the ones at issue here were directed to an abstract idea. *See In re Salwan*, 681 Fed. Appx. 938, 941 (Fed. Cir. 2017) (unpublished).[8] In *In re Salwan*, the court considered a patent that:

> claims methods of transferring patient health information, including electronic medical records ("EMR"), in a physician to patient network. The specification discloses that the network can be accessed by, *inter alia*, physicians, patients, healthcare product suppliers, and related government agencies. Users can access the network to schedule appointments, fill out forms, watch educational video clips, create electronic superbills, submit insurance claims, bill patients, communicate with doctors and patients, transfer patient health records, conference by video, advertise to patients, sell healthcare products, and rate healthcare providers.

*Id.* at 939. In finding that the claim was directed to an abstract idea under *Alice* Step One, the court explained that the claim "describes little more than the automation of a 'method of organizing human activity' with respect to medical information." *Id.* at 941.

Relying on *In re Salwan*, the Patent Trial and Appeal Board ("PTAB") found the same for a patent held by the inventor (Mr. Joao) of the patents at issue in this case. *Ex Parte Raymond Anthony Joao*, 2017 WL 2303383 at *3 (Patent Tr. & App. Bd. May 25, 2017). The patent at issue in *Ex Parte Joao*—much like here—claimed a receiver, database, and processing device that would

---

[8] Defendant argues that *In re Salwan* is somehow irrelevant because of *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020). I disagree. As an initial matter, it is worth noting that *TecSec* does not cite *In re Salwan*. As cited by Defendant, *TecSec* simply restates the Supreme Court's warning in *Alice*—decided before *In re Salwan*—to avoid "'overgeneralizing claims" in the § 101 analysis . . . ." *Id.* at 1293. *In re Salwan* and this Court does not do that. I have considered the claims individually and as an ordered pair.

take in patient information for the purpose of creating an insurance claim, collecting payment, serving as a central database accessible by a variety of people, etc. *Id.* at 1-2. The PTAB agreed with the patent examiner's view that the patent was directed at the "abstract idea of creating and submitting a claim for payment." *Id.* at 3. Moreover, the PTAB agreed that the patent at issue in *Ex Parte Joao* recited "[the] abstract idea of using health and insurance-related categories to organize health and insurance-related information, store information, and transmit information along with the fundamental economic practice of creating and submitting an insurance claim." *Id.*

Here, Defendant argues that it is clear its Patents are not directed to an abstract idea "when the Patent Claims are considered as a whole" and "in light of the Specification." (DE 38 at 10). Defendant takes issue with what it describes as Plaintiff's "gross oversimplification of the Patent Claims." (*Id.* at 11.). Defendant argues that despite Plaintiff's "oversimplification," its Patents are "directed to technological improvements in . . . electronic healthcare record systems, computer systems used in connection with . . . electronic healthcare records, and telehealth systems." *Id.* In this vein, Defendant notes that "[n]o one was doing [this] in December 1999." *Id.* at 12. Defendant also seems to argue that its Patents take a concrete form. *Id.*

Defendant's counterarguments are unavailing. Defendant mischaracterizes the law by appearing to argue that because its Patents may be useful that it must follow that they are not directed to an abstract idea. That, of course, is not the question under *Alice* Step One. Even in *Alice*, there was no dispute that the software at issue was useful insofar that it automated activity previously done by hand. *See Alice*, 573 U.S. at 212 ("merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention"). Moreover, Defendant does not cite to, and I cannot find, any claim language to support its assertion that its claims are directed to "technological improvements." I agree with Plaintiff's characterization that

10

the Patents address problems with keeping patient's records on paper by moving said record keeping online. (DE 44 at 7). Finally, Defendant's Patents do not claim any improvement in the hardware of computers. Simply using a computer to implement a process does not make a Patent "concrete." *See BSG Tech LLC*, 899 F.3d at 1285-86.

Thus, as the Federal Circuit and PTAB have already found as it related to largely analogous patents, I find that the relevant claims in Patents '040 and '048 are directed to abstract ideas. Patent '040 is directed at the abstract idea of billing insurance companies and organizing patient information. Patent '048 is directed at the abstract idea of organizing patient information and communicating with patients.

### B. *Alice* Step Two

Having found that Defendant's Patents are directed at an abstract idea, I now move on to *Alice* Step Two. Under step two, the court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' *Id.* "[T]ransformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.*

The Federal Circuit in *In re Salwan* also found that the patents at issue failed to "transform" the abstract idea into a patent-eligible application. *In re Salwan*, 681 Fed. Appx. at 941. The court reasoned that the use of claimed elements—some of which Defendant claims here—like "network, computer program, central server, device, and server for processing and transferring . . . " were not enough to transform the "long-known practices related to insurance billing and organizing patient health information on a generic computer." *Id.* Similarly, in *Ex Parte Joao*, the PTAB

agreed with the patent examiner's view that "the additional features amount to no more than generic computer components that serve to merely link the abstract idea to a particular technological environment (i.e. a receiver, a computer or communication device, a database or memory device, and a processing device) performing routine and conventional activities . . . . " *Ex Parte Joao*, 2017 WL 2303383, at *4.

Here, Defendant argues that its Patents provide "something more" when analyzed under the machine-or-transformation test.[9] (DE 38 at 16). Under the machine-or-transformation test, a process patent may provide "something more" if, "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Defendant argues that its Patents are "tied to a specialized processing device that allows for linking both current and previous providers, and that allows for the updated patient information." (DE 38 at 16). In addition, the Patents "are also tied to a memory device and a transmitter." *Id*.

Simply saying that its Patents claim a "specialized processing device" does not make it so. As Plaintiffs point out, Defendant's Patents actually say that "any computer" or "any other communication device" can carry out the claimed elements. (DE 44) (citing claims in both Patents). Moreover, by way of example, the Specification states the "central processing computer . . . is a network computer or computer system, or any other communication device which can provide functionality of, and which can be utilized as a central processing computer such as an Internet server computer and/or a web site server computer." ('040 Pat., 16:13-18). Defendant's assertions in opposition to this Motion do not change the plain meaning of its Patents—there is no

---

[9] The Supreme Court has held that the machine-or-transformation test is "a useful clue" or "investigative tool" for a § 101 analysis. *Bilski v. Kappos*, 561 U.S. 593, 604 (2010).

claimed machine or apparatus. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

Thus, Defendant's Patents fail at *Alice* Step Two. Having found that Defendant's Patents fail the *Alice* Framework, I find that, as a matter of law, Patents '040 and '048 are invalid under 35 U.S.C. § 101.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Epic Systems Corporation's Motion for Judgment on Pleadings (DE 35) is **GRANTED**.

(2) Final judgment will be entered by separate Order.

(3) Epic's Amended Complaint for Declaratory Judgment (DE 27) requests attorneys' fees, expenses, and costs. Should Epic intend to file a Motion for attorneys' fees it must do so pursuant to Local Rule 7.3, which sets a deadline of 60 days from the entry of final judgment.

**SIGNED** in Chambers at West Palm Beach, Florida, this 1st day of December, 2022.

Donald M. Middlebrooks
United States District Judge

cc: Counsel of Record