## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Epic Systems Corporation,

       Plaintiff/Counterclaim
       Defendant,

   v.

Decapolis Systems, LLC,

       Defendant/Counterclaim
       Plaintiff.

Case No. 9:22-cv-80173-DMM

## PLAINTIFF EPIC SYSTEMS CORPORATION'S
## SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES

**QUARLES & BRADY LLP**

Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602-5195
Tel.: (813) 387-0300
Fax: (813) 387-1800
kelli.edson@quarles.com

Kristin Graham Noel, *Pro Hac Vice*
Matthew J. Duchemin, *Pro Hac Vice*
Bryce A. Loken, *Pro Hac Vice*
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
Fax: (608) 251-9166
kristin.noel@quarles.com
matthew.duchemin@quarles.com
bryce.loken@quarles.com

*Counsel for Plaintiff Epic Systems Corporation*

QB\91590865.1

Pursuant to the Court's July 30, 2024 Order (Dkt. 113), Plaintiff Epic Systems Corporation hereby submits its Supplemental Motion for Attorneys' Fees stating the amount of attorneys' fees it seeks under 35 U.S.C. § 285.

## I.   RELEVANT BACKGROUND

On February 2, 2022, Epic filed its declaratory judgment action Decapolis in this Court after Decapolis dismissed its Texas suit against Epic due to improper venue but continued to threaten Epic and sue Epic's customers.  (Dkt. 88, at 3-4). Epic sued in this District because it is the judicial district in which Decapolis resides. (Dkt. 27, ¶ 5; Dkt. 33, ¶ 5). On December 1, 2022, this Court issued its Order finding Decapolis' asserted patents—U.S. Patent No. 7,464,040 and No. 7,490,048—invalid under 35 U.S.C. § 101 for reciting a patent ineligible abstract idea. (Dkts. 78, 79). On January 30, 2023, Epic filed its Verified Motion for Attorneys' Fees pursuant to 35 U.S.C. § 285. (Dkt. 88). At the Parties' request, the Court agreed to bifurcate Epic's eligibility to recover its attorneys' fees from the determination of the amount to which Epic is entitled. (Dkts. 91, 93).

On December 7, 2022, Decapolis appealed this Court's December 1, 2022 Order. Decapolis' appeal was unsuccessful. On April 4, 2024, a mere two days after oral argument, the Federal Circuit summarily affirmed this Court's invalidity Order. (*See* Dkt. 104); *Epic Sys. Corp. v. Decapolis Sys., LLC*, No. 2023-1302, Dkt. 37 (Fed. Cir. Feb. 21, 2024).

On May 2, 2024, Epic filed its Motion to Supplement its Motion for Attorneys' Fees, seeking to supplement its petition with the fees expended on Decapolis' unsuccessful appeal. (Dkt. 104). On May 6, 2024, the Court granted Epic's motion. (Dkt. 106).

On July 30, 2024, this Court granted Epic's Motion for Attorneys' Fees in part, finding that Epic is entitled to its attorneys' fees on the district court litigation and the Federal Circuit appeal, and ordering the Parties to meet and confer regarding the amount of attorneys' fees to be awarded.

(Dkt 113). The Court ordered the Parties to file supplemental briefing following their meet and confer. (*Id.*, at 16-17).

## II.     LOCAL RULE 7.3(A) DISCLOSURES

### A.     Fees Sought by Epic.

As this Court observed in its Order, "[i]n determining the award of attorneys' fees, a court must determine what is reasonable. 'Normally this will encompass all hours reasonably expended on the litigation,' *Mathis v. Spears*, 857 F.2d 749, 755–56 (Fed. Cir. 2012), and can include the time spent on appeal. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*., 876 F.3d 1372, 1380 (Fed. Cir. 2017); *Therasense, Inc. v. Becton, Dickinson & Co*., 745 F.3d 513, 517 (Fed. Cir. 2014)." (Dkt. 113 at 15). Thus, in its Order, the Court held that Epic was entitled to its reasonable attorneys' fees for the district court litigation both due to the substantive strength of Epic's case, and Defendant's litigation misconduct. (*Id*. at 15). The Court also held that Epic was entitled to reasonable attorneys' fees defending the appeal, but that it would be something less than "the entirety of the fees ...incurred in litigating the appeal" because it did not find the same record of misconduct at the Federal Circuit.  (Dkt. 113 at 15-16). Accordingly, Epic seeks a total award of **$665,014.05** for its reasonable attorneys' fees incurred in connection with this case. This requested amount includes two components: (1) **$405,281.08** for fees incurred in connection with this district court action; and (2) **$259,732.97** for fees incurred in connection with defending Decapolis' appeal before the Federal Circuit. As detailed below, consistent with the Court's instruction, Epic reduced the fees it is seeking in connection with Decapolis' appeal by 15%. Specifically, Epic has reduced the fees it is seeking in connection with the appeal from $305,568.20 (Dkt. 104, at 3) to $259,732.97.

**B.**     **Identity, Experience, and Qualifications of Timekeepers.**

**1.**     **District Court Action.**

The timekeepers for Epic's fees sought in connection with the district court are: (1) Matthew J. Duchemin; (2) Kristin Graham Noel; (3) Martha Jahn Snyder; (4) Bryce A. Loken; (5) Anita Marie Boor; (6) Kelli A. Edson; (7) Michael A. Jaskolski; (8) John R. Linzer; (9) Stephen E. Osseiran; (10) Terri S. Flynn; (11) Lauren N. McComis; and (12) Lizabeth M. Hilley. Their experience and qualifications are as follows:

- Ms. Noel was admitted to practice in Illinois in 1996 and Wisconsin in 1999, where she has practiced continuously in intellectual property litigation. Ms. Noel first billed to this matter on December 21, 2021 and remains active.

- Mr. Duchemin was admitted to practice law in the state of Wisconsin in 1999 and has practiced continuously in the areas of intellectual property and commercial litigation. Mr. Duchemin first billed to this matter on June 29, 2022, as Ms. Snyder was preparing to depart the firm, and remains active.

- Ms. Snyder was admitted to practice in Wisconsin in 2008 where she practiced in intellectual property litigation. Ms. Snyder first billed to this matter on January 31, 2022 and departed the firm in August 2022.

- Mr. Loken was admitted to practice law in Wisconsin in 2016, where he has practiced continuously in intellectual property litigation. Mr. Loken first billed to this matter on May 25, 2022, shortly before Ms. Boor departed the firm, and remains active.

- Ms. Boor was admitted to practice in the state of Wisconsin in 2014 where she practiced in intellectual property litigation. Ms. Boor first billed to this matter on December 20, 2021 and departed the firm in June 2022.

- Ms. Edson was admitted to practice in Florida in 1999 where she has practiced continuously in the area of complex commercial litigation. Ms. Edson first billed to this matter on January 27, 2022 and remains active.

- Mr. Jaskolski was admitted to practice in Wisconsin in 1992, where he has practiced as a patent attorney, and first billed to this matter on February 1, 2022.

- Mr. Linzer was admitted to practice in Illinois in 2004, where he has practiced continuously as a patent attorney, and first billed to this matter on January 31, 2022.

- Mr. Osseiran was admitted to practice in Illinois in 2021 where he has practiced

3

continuously in the area of intellectual property litigation. Mr. Osseiran first billed to this matter on December 21, 2021 and departed the firm in October 2023.

- Ms. Flynn was admitted to practice in Wisconsin in 1996, where she has practiced as a patent attorney, and first billed to this matter on February 2, 2022.

- Ms. McComis was admitted to practice in Wisconsin in 2015, where she has practiced as a patent attorney, and first billed to this matter on May 24, 2022.

- Ms. Hilley has been a Certified Paralegal since 2002 and has worked for the firm since 2014, assisting with intellectual property litigation. Ms. Hilley first billed to this matter on December 21, 2021 and remains active.

### 2.     Federal Circuit Appeal.

The timekeepers for Epic's fees sought in connection with the appeal in this action are: (1) Matthew J. Duchemin; (2) Kristin Graham Noel; (3) Bryce A. Loken; (4) Lizabeth M. Hilley; (5) Stephen E. Osseiran; and (6) Lauren C. Bolcar. The timekeepers' experience and qualifications are set forth above in the immediately preceding section with exception of Ms. Bolcar. Ms. Bolcar was admitted to practice law in New Jersey in 2013 and New York in 2014, and has practiced continuously in the Washington D.C. area in intellectual property litigation, including before the U.S. Court of Appeals for the Federal Circuit.

### C.     Hourly Rates and Number of Hours.

Epic identifies the following hourly rates and number of hours incurred in connection with the attorneys' fees Epic is seeking in connection with (1) the district court action and (2) the appeal before the Federal Circuit.

### 1.     District Court Action.

Consistent with Quarles and Brady LLP's standard practice, and with Epic's agreement, the timekeepers' rates have changed periodically since Decapolis first threatened Epic. The following summarizes the rates and hours billed in connection with the time Epic is seeking for the district court action. This total amounts to $405,281.08 and is the same amount requested in

Epic's original Motion for Attorneys' Fees. (Dkt. 88, at 17-20). As described in the below Certificate of Good Faith Conference, the parties were unable to reach an agreement in reduction to the amount sought for the district court action.

| Timekeeper | Title | Office | Hourly Rates | Total Hours |
|---|---|---|---|---|
| Boor, Anita M. | Associate | Madison, WI | $425.00 | 122.3 |
| Duchemin, Matthew J. | Partner | Madison, WI | $625.00 $665.00 | 17.1 |
| Edson, Kelli A. | Partner | Tampa, FL | $580.00 $615.00 | 11.3 |
| Flynn, Terri S. | Of Counsel | Milwaukee, WI | $480.00 $510.00 | 27.0 |
| Hilley, Lizabeth M. | Paralegal | Madison, WI | $295.00 $315.00 | 93.6 |
| Jaskolski, Michael A. | Partner | Milwaukee, WI | $695.00 $860.00 | 149.3 |
| Linzer, John R. | Partner | Chicago, IL | $530.00 $570.00 | 60.4 |
| Loken, Bryce A. | Associate | Madison, WI | $385.00 $435.00 | 88.4 |
| McComis, Lauren N. | Associate | Milwaukee, WI | $390.00 | 18.3 |
| Noel, Kristin Graham | Partner | Madison, WI | $695.00 $735.00 | 41.2 |
| Osseiran, Stephen E. | Associate | Chicago, IL | $370.00 $415.00 | 139.5 |
| Snyder, Martha Jahn | Partner | Madison, WI | $455.00 $485.00 | 54.4 |

### 2.    Federal Circuit Appeal.

The following table summarizes the rates and hours billed in defending Decapolis' appeal that Epic originally sought prior to the Court's ordered reduction. Epic previously requested a total of $305,568.20 in connection with the appeal.

| Timekeeper | Title | Office | Hourly Rates | Total Hours |
|---|---|---|---|---|
| Duchemin, Matthew J. | Partner | Madison, WI | $665.00 $750.00 | 34.2 |

| Hilley, Lizabeth M. | Paralegal | Madison, WI | $315.00<br>$340.00<br>$355.00 | 59.6 |
| Loken, Bryce A. | Associate | Madison, WI | $435.00<br>$510.00 | 161.4 |
| Noel, Kristin Graham | Partner | Madison, WI | $735.00<br>$795.00<br>$835.00 | 143.5 |
| Osseiran, Stephen E. | Associate | Chicago, IL | $415.00 | 162.8 |
| Bolcar, Lauren C. | Associate | Washington, D.C. | $480.00 | 37.5 |

Pursuant to the Court's instruction (Dkt. 113, at 15-16), Epic has reduced the amount of fees it is seeks in connection with the appeal. Epic reduced the appeal fees sought by fifteen percent (15%) across all timekeepers. With this further reduction, Epic seeks a total of $259,732.97 for time incurred on appeal. As described in the below Certificate of Good Faith Conference, the parties were unable to reach an agreement in reduction to the amount sought for the appeal.

### 3.    Description of Tasks.

A description of the tasks done during the above hours pursuant to Local Rule 7.3(a)(5)(c) are provided in **Appendix A** (district court action) and **Appendix B** (appeal) and is incorporated herein by reference.

For the district court action, at a high-level, the tasks completed during the hours identified above include:

(i) reviewing and analyzing the Asserted Patents' claims, including the claims' invalidity under 35 U.S.C. §§ 101, 102, 103, and 112;

(ii) preparing and filing Epic's action for declaratory judgment;

6

(iii) reviewing, considering, and answering Decapolis' counterclaims against Epic, including Epic's alleged infringement of the Asserted Patents;

(iv) preparing and filing Epic's briefing in support of its Motion for Judgment on the Pleadings, including responding to Decapolis' attempts to introduce the Arrigo Report;

(v) reviewing and considering Decapolis' preliminary infringement contentions; (v) considering and drafting Epic's invalidity contentions;

(vi) preparing and serving Epic's discovery requests;

(vii) reviewing and responding to Decapolis' discovery requests, including reviewing and producing documents;

(viii) reviewing Decapolis' discovery responses and engaging in discovery related correspondence regarding the same;

(ix) preparing and filing Epic's Opening Claim Construction Brief (Dkt. 42);

(x) preparing and filing Epic's Motion to Stay; and

(xi) preparing and filing responses to Decapolis' Notices of Supplemental Authority.

In connection with Epic's response to Decapolis' appeal, the time requested herein includes the

following tasks:

(i) working with Decapolis to finalize the joint appendix;

(ii) reviewing and analyzing Decapolis' opening appellate brief, including reviewing and responding to Decapolis' request to extend its deadline to file its opening appellate brief;

(iii) preparing and filing Epic's response appellate brief;

(iv) reviewing and considering Decapolis' motion to extend the already passed deadline for its reply brief;

(v) reviewing and analyzing Decapolis' reply appellate brief;

(vi) reviewing and considering the Federal Circuit's order to show cause regarding Decapolis' failure to file the joint appendix; and

(vii) prepare for and attend oral argument before the Federal Circuit.

III.     **REASONABLENESS**

The starting point in determining reasonable attorneys' fees is the lodestar method, which is properly calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In computing the lodestar, the first step is to determine the reasonable hourly rate. Once the hourly rate is set, the Court must next determine the reasonable number of hours expended in the litigation. The burden of establishing the time sought was reasonably expended on the litigation at-hand is on the fee applicant. *See ACLU of Ga. V. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). The fee applicant must provide the Court with detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded. *Id*.

Epic encloses in support of its Supplemental Motion the Declaration of Attorney David Brafman, with the law firm Akerman LLP, (the "Brafman Decl."). Mr. Brafman is an attorney located in this District and has specialized in patent, trademark, and other intellectual property litigations for 25 years. Mr. Brafman attests to the reasonableness of the number of hours worked in this case given the nature of the case, the time required to respond to Decapolis' dilatory and/or spurious conduct, and the work required to brief and litigate Epic's various motions, filings, and appellate defense. Epic further encloses excerpts from the 2023 Report of the Economic Survey by the American Intellectual Property Law Association ("AIPLA"). (Declaration of Bryce A. Loken ("Loken Decl."), Ex. 4.)  As set forth in Mr. Brafman's declaration, and supported by the AIPLA Report, the selected fees incurred by Epic in connection with the district court action and Decapolis' meritless appeal are reasonable and were incurred at an appropriate hourly rate. (Declaration of David S. Brafman ("Brafman Decl."), ¶¶ 8-11, 15-18).

### A.      Reasonable Hourly Rates.

The hourly rates sought by Epic are reasonable because they are consistent with rates charged by attorneys with comparable skills specializing in patent litigation, are commensurate with the specialized skill and labor required to defend against Decapolis' patent infringement claims, the time and labor required for patent litigation is higher than other litigation matters, Epic successfully invalidated two patents and secured an affirmance on appeal, and the amount sought is less than the median fees incurred in similar patent litigations. Moreover, through the latest meet and confer process, Decapolis agreed not to challenge the hourly rates incurred by Epic's timekeepers, including given the requirements of SD Fla. L.R. 7.3(a) should Decapolis challenge Epic's rates. (Loken Decl., Ex. 2).

The Court must first determine the reasonable hourly rate. A reasonable hourly rate is one which is "in line with the prevailing market rate in the relevant legal community for similar services performed by lawyers of reasonably comparable skills, experience[,] and reputation." *Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, 842 F. Supp. 2d 1340, 1342 (S.D. Fla. 2012). Generally, the "prevailing market rate" is determined by the location where the case is filed and the subject matter of the litigation. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1302 (S.D. Fla. 2015). However, in patent litigation cases, courts routinely look to other patent cases across the country for similar rates. *See CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17CV02479GPCDEB, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (collecting cases); *Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. CV 15-379-LPS, 2022 WL 1224901, at *4 (D. Del. Apr. 25, 2022).

The Court may also include any of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("In determining what is a 'reasonable' hourly rate and what number

of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*").[1] The factors most applicable to the instant action include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the customary fee charged for the work; (5) the amount involved and the results obtained; and (6) the experience, reputation, and ability of the attorneys. *Id.*; *see also Acuna v. Med.-Com. Audit, Inc.*, No. 21-CV-81256, 2022 WL 1222693, at *1 (S.D. Fla. Apr. 26, 2022), *report and recommendation adopted*, No. 9:21-CV-81256-WPD, 2022 WL 1597814 (S.D. Fla. May 20, 2022).

Here, Epic's timekeepers' rates are reasonable. ***First***, Quarles & Brady LLP has 13 offices across the United States and employs over 500 attorneys. (Loken Decl., Ex. 1). As attested to by Attorney Brafman, and corroborated in the AIPLA's report, the rates charged by the Quarles timekeepers are at or below the average rates charged by midsize to large firms in patent litigation. (Brafman Decl., ¶ 9; *Compare* Sec. II.C. *with* AIPLA Report at p. 102).

***Second***, similarly, the timekeepers in this action possessed specialized skills necessary to patent litigation and have the experience, reputation, and ability required for the particularized litigation involved with patent infringement lawsuits. As noted above in Section II.B., with the exception of Attorney Edson, Epic's local counsel in this action, all timekeepers specialize in intellectual property litigation or are patent attorneys. This specialized skill and experience justifies increased rates, which is typical for specialized patent litigation or sophisticated intellectual property litigation. (Brafman Decl., ¶ 12); *see e.g.*, *CliniComp*, 2023 WL 2604816, at *3

---

[1] The Eleventh Circuit further noted that "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981." *Id.* at 1350, n.2

(collecting cases and concluding rates of $1,465, $1,120, and $1,055 for the three partners; $805 and $610 for the two associates; and $495, $420, and $415 for the three paralegals reasonable; explaining "[d]istrict courts in other complex patent cases have found similar rates to be reasonable in awarding attorneys' fees."); *see also Wi-LAN*, 2022 WL 1224901, at *4.

*Third*, the amount of time and labor required for patent litigation is considerably higher than other litigation matters, even trademark litigation. (Brafman Decl., ¶ 14; *Compare* AIPLA at p. 62 *with id.*, at p. 64).

*Finally*, in the 1,421 hours, totaling $665,014.05 after the 15% discount, incurred by the Quarles timekeepers on behalf of Epic, the attorneys were able to complete the tasks identified in Section II.C.3., resulting in the invalidation of two patents and successful affirmance before the Federal Circuit. As Mr. Brafman attests, this amount is reasonable for the given outcome. (Brafman Decl., ¶ 15). Indeed, the AIPLA Report shows that similar cases involving defense of patent infringement claims brought by a non-practicing entity (*see* dkt. 88, at 1), the total cost in 2022 to defend, including of discovery, motions, claim construction, was between $1,450,000 and $2,000,000. (AIPLA Report, at p. 62). If the litigation went to trial and appeal, the total cost was between $3,200,000 and $3,875,000. (*Id.*). Thus, the amount sought by Epic, using the timekeepers' billed hourly rates, is reasonable and well within the median litigation costs for a similar action.

In sum, the hourly rates charged by Epic's timekeepers are reasonable and should be accepted by the Court.

### B.    Reasonable Number of Hours.

The number of hours expended by Epic in defense of this matter are likewise reasonable because the total number of hours sought by Epic are below the median for similar actions, Epic

11

has already discounted the amount of hours it is seeking for both the instant action and the appeal, thus removing non-reasonable time from the amount sought, and Epic is seeking less than a quarter of its total fees incurred across all actions involving Decapolis. Epic is entitled to "all hours reasonably expended on the litigation," including its reasonable time spent on the appeal. *Mathis*, 857 F.2d at 755–56; *Inventor Holdings*, 876 F.3d at 1380. Nevertheless, Epic, at the Court's instruction,  further discounted the attorneys' fees it seeks for the appeal by 15%. In total, the number of hours, thus resulting fees, sought by Epic are reasonable.

The second step in determining the lodestar is to assess the reasonableness of the number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. This inquiry focuses on the exercise of "billing judgment." *Id.* at 1301-02. Billing judgment requires the exclusion of hours that are deemed excessive, redundant, or otherwise unnecessary. *Korman*, 2019 WL 2142521, at *4.  Here, Epic submits that the hours incurred and sought for recovery by each timekeeper in defense of Decapolis' meritless patent lawsuit are reasonable and necessary. (*See* Brafman Decl., ¶¶ 16-18).

As noted above, the amount of total fees Epic is seeking to recover, which incorporates the number of hours expended by Epic's timekeepers, is below the median cost of litigation for similar actions against non-practicing entities involving similar amounts of work. (*See supra* Sec. III.A.).

Moreover, Epic has already substantially discounted the amount of hours sought in connection with this litigation before this Court and the Federal Circuit. (*See* Dkt. 88-1 (see redactions noting time billed but not sought); Dkt. 104-1 (redactions noting same)). For example, for the time submitted in Epic's original Motion for Attorneys' Fees (Dkt. 88), Epic removed a total of more than 450 hours from the time it actually billed to Epic for services rendered. (*See* Dkt. 88-1; Loken Decl., ¶ 3). In total, of the more than 2,350 hours billed to Epic for services rendered in connection with the instant action with Decapolis through March 31, 2024, Epic sought

12

to recover only 1421.8 hours, thus removing more than 950 hours from the fees sought. (*See* Dkts. 88-1, 104-1; Loken Decl., ¶ 3). While some of the time redacted was to remove time errantly billed to the wrong matter, the remainder was removed at Epic's discretion to accommodate a good faith attempt to reduce the hours sought to a reasonable amount. (Loken Decl., ¶ 3). Moreover, Epic has not included herein, or any past Motion for Attorneys' Fees, the hours incurred in preparing and filing Epic's Motions for Attorneys' Fees. (*Id.*, ¶ 3).

Indeed, as noted in Epic's original fees filing, as of January 30, 2023, the district court fees sought here accounted for only 24.8% of the total fees Epic had incurred across all actions involving Decapolis, including Decapolis' lawsuits against Epic's customers. (*See* Dkt. 88, at 17; Dkt. 88-4, ¶ 15).

Finally, Epic's additional proposed 15% reduction for its attorneys' fees on appeal is a reasonable accommodation given that the substantive strength of Decapolis' case, including its appeal, would warrant it being classified as exceptional. (*See* Dkt. 113, at 12). While Decapolis had the right to file an appeal, Decapolis used that right to file yet more meritless arguments to which Epic was forced to respond. Indeed, as the Court noted, Decapolis' brief and subsequent oral argument amounted to an outright failure to point to any inventive concept in the Asserted Patents. (*Id.* at 10-11). And as Judge Prost and Judge Chen noted, what little arguments Decapolis could articulate had long been rejected under the Federal Circuit's jurisprudence. (Dkt. 104, at 2-3). Thus, while Decapolis had a right to appeal this Court's decision, like its right to assert its patents against Epic and its customers, Decapolis had an obligation to not assert or maintain meritless claims—either before this Court or the Federal Circuit. Because Decapolis continued to maintain the same meritless arguments on appeal, and Epic nevertheless had to bear the costs of

13

defending against Decapolis' meritless arguments, Epic is entitled to the discounted amount it seeks.

Moreover, beyond asserting the same meritless arguments to the Federal Circuit, Epic was forced to deal with Decapolis' continued dilatory conduct on appeal. Decapolis sought, and received, an extension of both its opening brief and reply brief deadlines. *Epic Sys. Corp. v. Decapolis Sys., LLC*, No. 2023-1302, Dkt. 9 (Fed. Cir. Feb. 21, 2024); *Id.*, Dkt. 16 (Fed. Cir. June 8, 2024). Decapolis also failed to timely file the joint appendix until after the Federal Circuit issued a notice directing Decapolis to file a motion for leave or else have its appeal dismissed. *Id.*, Dkt. 19 (Fed. Cir. July 10, 2024).

Accordingly, the Court should find the number of hours expended and sought by Epic's attorneys to be reasonable.

### C.    Final Lodestar Calculation of Epic's Attorneys' Fees.

After multiplying the hours reasonably billed by the reasonable hourly rates for each attorney for both the district court and appeal, including the 15% across the board reduction on the appellate fees sought, the final lodestar total is **$665,014.05**. There is a "strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Korman*, 2019 WL 2142521, at *6. Epic submits that this sum is an appropriate award based on Epic's attorneys' efforts and the results obtained.

### IV.    DECAPOLIS' MERITLESS ARGUMENTS RAISED DURING THE MEET AND CONFER PROCESS

During the parties' meet and confer process, Decapolis raised a number of contrived objections to Epic's fees. (*See* Loken Decl., Ex. 2). ***First***, Decapolis claimed that limiting Epic's appellate timekeepers to two individuals and then further reducing that amount by 25% is

reasonable. Epic disagrees. (*See also* Brafman Decl., ¶ 8(j)). All timekeepers that assisted with the appeal were integral to Epic's success before the Federal Circuit. Limiting the fees to two of Epic's primary timekeepers for the appeal, Kristin Graham Noel and Bryce A. Loken, would result in a total of $189,387.33 or only 61.98% of the fees Epic originally sought in Dkt. 104. (Loken Decl., ¶ 6). Further reducing that amount by 25%, as Decapolis demands, would result in only $142,040.50 or 46.5% of the fees Epic originally sought. (*Id.*). Decapolis' requested deduction, totaling 53.5% of the original amount sought, is unreasonable, especially in this case where the Court found that the relative merits alone were sufficient to declare the case exceptional. (Dkt. 113, at 10, 12). Moreover, Decapolis' position is undermined by the AIPLA statistics and Attorney Brafman's opinions. (Brafman Decl., ¶ 8(j); AIPLA Report, at 63). As articulated above, Epic's requested appellate fees were already reduced when submitted in Dkt. 104 and Epic is proposing a further 15% reduction to its original submission.

> **Second**, Decapolis asserted that Epic should be limited to only two attorneys for all work that was conducted in connection with Epic's Declaratory Judgment Complaint. (Loken Decl., Ex. 2). This is a straw man argument. While Epic had five timekeepers bill time to the drafting, review, and strategy behind the declaratory judgment complaint, the bulk of work performed was done by Attorney Boor and Paralegal Hilley. (*See* Dkt. 88-1, at ECF 2-7). It is non-sensical to require Epic to limit itself to two timekeepers for a patent litigation matter. (Brafman Decl., ¶ 8(j)). The pertinent question is whether the total hours expended for this work were reasonable (they were), and that question is unrebutted by the comments from Decapolis' counsel. (*See* Loken Decl., Ex 2).

**Third**, Decapolis demands that Epic remove all fees incurred in connection with all discovery. (Loken Decl., Ex. 2). Decapolis' position is not reasonable. The parties jointly set the schedule for the case with discovery set to close on September 14, 2022. (Dkts. 28, 30). Epic was following the Court's schedule, including its guidance at L.R. 26.1(d),(g) regarding timing and management of discovery, in issuing and following up on its discovery demands. In reality, Decapolis was not concerned about Epic adhering to the schedule, but about Epic pursuing discovery (according to the schedule) while rejecting Decapolis' settlement offers. (*Compare* Dkt. 88-7 *with* Dkts. 88-4, 41). Moreover, *Decapolis* was the party to refuse to stay discovery in this case (Dkt. 88-14) and Decapolis did not consent to the stay until after it forced Epic to brief and file an opposed motion to stay. (*See* Dkts. 39, 43).

**Finally**, Decapolis complains that Epic "r[a]n up the costs and fees for months before it finally moved for judgment based on Section 101. We got dragged into that District and were not as Plaintiff Epic that picked it." (Loken Decl., Ex. 2). As an initial matter, Decapolis is at home in the Southern District of Florida and should not be surprised by a declaratory judgment action commenced in its home court in response to its dismissal of its case in the Western District of Texas for lack of venue and its continued threats against Epic's customers. (*See* Dkt. 88, at 3-4; Dkt. 33, ¶ 5). Moreover, Epic filed its Amended Declaratory Judgment Complaint on April 14, 2024, Decapolis answered and counterclaimed on May 5, 2022, and Epic answered Decapolis' counterclaims on May 19, 2022. (Dkts. 27, 33, 34). Epic filed its Motion for Judgment on the Pleadings on May 20, 2022. (Dkt. 35).  As Epic's invoices and the result of the Motion demonstrate (dkt. 88-1), Epic's timekeepers spent their time after amending Epic's complaint by thoroughly

researching Section 101 law and preparing the quality work product Epics expects of its outside counsel. (Brafman Decl., ¶ 8(f)).

## V.   CONCLUSION

For the reasons set forth above, Epic respectfully requests that this Court award Epic its attorneys' fees incurred in this action and on appeal in the amount of $665,014.05, along with such other and further relief as this Court may deem just and proper.

17

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.3(b), the below attest that the parties met and conferred in good faith. On Friday, August 2, 2024, counsel for Decapolis emailed counsel for Epic requesting a 4-week extension of the deadlines the Court set in its July 30, 2024 Order. (Loken Decl., Ex. 2). Counsel for Epic responded on August 5 and offered to make themselves available on August 7 for as long as needed to work through the fees requested and stated it was not prudent to seek an extension of this Court's ordered deadlines absent extenuating circumstances. (*Id.*). The parties' counsel met and conferred on August 7. Counsel for Decapolis proposed the following on the requested fees: (1) On the fees incurred on appeal (Dkt. 104), limit the timekeepers to Bryce A. Loken and Kristin Graham Noel; (2) For the district court fees (Dkt. 88), removing all time incurred in connection with discovery, including Epic's motion to compel; and (3) Once the preceding two adjustments are made, apply an additional 25% discount across remaining fees for both the district court and the appeal. (*Id.*). On the meet and confer Decapolis' counsel also represented that it would not be challenging Epic's hourly rates, including in light of Local Rule 7.3(a). (*Id.*). Epic's counsel took this offer to Epic. The parties met and conferred again on August 8, 2024. (*Id.*). Epic's counter-proposal was to reduce the amount of appellate fees sought by 15% while recovering 100% of the fees sought for the district court action. (*Id.*). On August 9, 2024, counsel for Decapolis wrote to reject Epic's latest offer and made the statements contained herein at Section. IV.

Accordingly, the parties met and conferred in good faith but were unable to come to an agreed resolution on the amount of attorneys' fees owed to Epic pursuant to the Court's July 30, 2024 Order (Dkt. 113).

*/s/ Kelli A. Edson*
Kelli A. Edson

Dated:  August 9, 2024.                     Respectfully submitted,

                                            QUARLES & BRADY LLP

                                            */s/ Kelli A. Edson*
                                            Kelli A. Edson
                                            Florida Bar No. 179078
                                            QUARLES & BRADY LLP
                                            101 East Kennedy Boulevard, Suite 3400
                                            Tampa, Florida 33602-5195
                                            Tel.: (813) 387-0300
                                            Fax: (813) 387-1800
                                            kelli.edson@quarles.com

                                            Kristin Graham Noel, *Pro Hac Vice*
                                            Matthew Duchemin, *Pro Hac Vice*
                                            Bryce A. Loken, *Pro Hac Vice*
                                            QUARLES & BRADY LLP
                                            33 East Main Street, Suite 900
                                            Madison, WI 53703
                                            Tel.: (608) 251-5000
                                            Fax: (608) 251-9166
                                            kristin.noel@quarles.com
                                            matthew.duchemin@quarles.com
                                            bryce.loken@quarles.com

                                            ***Counsel for Plaintiff Epic Systems Corporation***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on August 9, 2024 with a copy of this document via the Court's CM/ECF system:

Marc J. Kesten, P.L.
Marc J. Kesten
9220 NW 72nd Street
Parkland, FL 33067
marc@kestenlex.com
(954) 600-9500

Garteiser Honea, PLLC
Christopher Honea
119 West Ferguson
Tyler, Texas 75702-7203
chonea@ghiplaw.com
ghdecapolis@ghiplaw.com
(415) 785-3762

*/s/ Kelli A. Edson*
Kelli A. Edson